**MISSOURI PAC. R. CO. v. UNITED STATES (INTERSTATE COMMERCE COMMISSION et al., Interveners).**

District Court, W. D. Arkansas, Ft. Smith Division. August 5, 1927.

No. 450.

1. **Commerce ⊂══85(5)—Order of Interstate Commerce Commission establishing through route by rail held beyond its authority under the statute (Interstate Commerce Act, § 15 [4], as amended by Transportation Act, § 418 [49 USCA § 15]).**

By a finding of the Interstate Commerce Commission the Missouri Pacific Railroad has lines reaching from eastern points involving interstate traffic to Ft. Smith, Ark., which are not unreasonably long, and which involve a haul of 300 miles or more. *Held* that, under Interstate Commerce Act, § 15 (4), as amended by Transportation Act, § 418 (49 USCA § 15, Comp. St. § 8583), which provides that in establishing a through route the commission shall not, except in cases of emergency, require any carrier by railroad without its consent to embrace in such route substantially less than the entire length of its railroad which lies between the termini of such proposed through route, it was without authority to establish a through route between such Eastern points and Ft. Smith, which embraced carriage over a line of the Missouri Pacific only 46 miles long.

2. **Commerce ⊂══85(5)—That small railroad needed increased revenue held not to justify establishing through route over it to provide revenue at expense of competing lines (Interstate Commerce Act, § 15[3], as amended by Transportation Act, § 418 [49 USCA § 15]).**

That a small and weak railroad line needs increased revenue in order to maintain it in effective operation may be a matter of public interest, but not in such sense as authorizes the Interstate Commerce Commission, under Interstate Commerce Act, § 15 (3), as amended by Transportation Act, § 418 (49 USCA § 15 [Comp. St. § 8583]) to establish a through route over it for the purpose of producing such revenue, where it involves the taking of a part

of the line of another railroad carrier and including it in a competing line.

In Equity. Suit by the Missouri Pacific Railroad Company against the United States with the Interstate Commerce Commission and the Ft. Smith, Subiaco & Rock Island Railroad Company, intervening defendants, to enjoin enforcement of order of Interstate Commerce Commission. Preliminary injunction made permanent.

Edward J. White and H. H. Larimore, both of St. Louis, Mo., and Thos. B. Pryor, of Ft. Smith, Ark., for Missouri Pac. R. Co.

Blackburn Esterline, of Washington, D. C., for the United States.

Daniel W. Knowlton, of Washington, D. C., for the Interstate Commerce Commission.

James B. McDonough, of Ft. Smith, Ark., for the Ft. Smith, Subiaco & Rock Island R. Co.

Before BOOTH, Circuit Judge, and REEVES and YOUMANS, District Judges.

PER CURIAM. This is a suit by the petitioner to enjoin the enforcement of an order of the Interstate Commerce Commission, made on March 2, 1926, in the case of Ft. Smith, Subiaco & Rock Island Railroad Company v. Alabama & Vicksburg Railway Company et al. The order requires the establishment of through routes and joint rates for west-bound interstate traffic over the line of the Subiaco by way of Ola, Dardanelle, and Paris, Ark. The order includes in the route so established the branch line of the Missouri Pacific between Paris, Ark., and Ft. Smith.

The petitioner contends, first, that the order of the Commission is in violation of section 15(4), Interstate Commerce Act (49 USCA § 15) which prohibits the Commission from requiring "any carrier by railroad, without its consent, to embrace in such route substantially less than the entire length of its railroad * * * which lies between the termini of such proposed through route"; and, second, that the inclusion of the Paris branch of the petitioner in the through route sought to be established by the order of the Commission amounts to the taking of petitioner's property without due process of law. [1] A proceeding was first instituted before the Commission by the Ft. Smith, Subiaco & Rock Island Railroad Company against the Arkansas Central Railroad Company and Missouri Pacific Railroad Company. At that time no other carriers were made parties. On February 12, 1924, division 4 of the Commission made a report in the case. 87 Interst.

Com. Com'n R. 617. In that report it was stated that the Paris branch of the Missouri Pacific, extending from Ft. Smith to Paris, was 46 miles long; that from Paris the Subiaco extends eastward to Dardanelle, Ark., a distance of forty miles, connecting at that point with a branch of the Chicago, Rock Island & Pacific Railroad to its main line at Ola, Ark., a distance of 14 miles from Dardanelle.

One of the points at issue is shown from the following paragraph from the report of the Commission:

"Complainant contends that existing routes via the Missouri Pacific are unreasonably long as compared with those embracing its line. Memphis is referred to by complainant as a representative interstate point. The distances between Memphis and Ft. Smith are approximately the same, 308 miles, via the Missouri Pacific, on the one hand, and Rock Island to Ola (or Missouri Pacific to Little Rock and Rock Island to Ola), complainant line to Paris, and the Paris branch beyond, on the other hand. Between Memphis and Paris the distance via the Missouri Pacific is 356 miles, and via the Rock Island and complainant line it is 262 miles. Taking all points on the Paris branch, Ft. Smith to Paris, inclusive, the average distances via these two routes are 332 and 285 miles, respectively. In other words, the average circuity of the Missouri Pacific's route is approximately 16 per cent."

Upon the same point the Commission said:

"We are of opinion that the one-line route of the Missouri Pacific is not so unreasonably long as to warrant us in depriving it of its long haul on traffic to which it otherwise would be entitled under section 15 (4) of the act, and that no undue preference or prejudice is shown to result from its participation in through routes with the complainant line on Arkansas intrastate traffic. We are further of opinion, however, that the continued operation of the complainant road will be in the public interest, and that through routes which would bring it additional traffic and revenue should be established, where such action may be taken without invading rights guaranteed by the statute. The question, then, is as to the extent of the Missouri Pacific's right to the long haul."

Further in the same report the Commission said:

"A consideration of these matters brings us to the conclusions that on inbound traffic the law does not guarantee to the Missouri Pacific its long haul as against the initial carrier, and that in instances where traffic may be so routed, without unreasonable circuity, as to give the originating carrier a longer haul, in connection with the use of the complainant line as an intermediate carrier, than via another route in connection with which the Missouri Pacific would have a longer haul, we are at liberty, notwithstanding the provisions of paragraph 15 (4) of the act, to require the establishment of such through routes. Having already found that such additional routes would be in the public interest, it is our opinion that they should be established to points on the Paris branch, Paris to Ft. Smith, inclusive, from eastern interstate points."

No order was made by the Commission on that report, for the reason that other carriers would be affected and that they had not been made parties. Other carriers were accordingly made parties defendant, and an amended complaint was again considered by division 4 of the Commission, and a report made on October 23, 1925. 102 Interst. Com. Com'n R. 708. The conclusion of the Commission was stated as follows:

"We accordingly find that the through routes and joint rates here sought are not necessary or desirable, in the public interest, and our former finding in this respect is reversed."

The matter was afterwards considered by the full Commission, and it made report thereon March 2, 1926. 107 Interst. Com. Com'n R. 523. In that report the Commission says:

"The rates and routes sought by complainant would apply only on west-bound traffic moving through Ola and Dardanelle, Ark., over its line and the Paris branch of the Missouri Pacific, to Ft. Smith, Ark., and points beyond. The other facts of record are sufficiently set forth in the reports referred to in the preceding paragraph, and need not be repeated here. The questions presented for decision are indicated by the contentions of the Missouri Pacific: (1) That establishment of the routes sought by complainant would necessarily require the Missouri Pacific to short haul itself in violation of section 15 (4) of the Interstate Commerce Act; and (2) that the public interest would not be served by their establishment.

"It should be noted that complainant expressly disclaims the right to participate in routes which would deprive an initial carrier of a long haul. From most of the points of origin involved, routes in accordance with complainant's prayer can be established over which traffic may move, with-

out passing over the Missouri Pacific's rails until it reaches Paris, Ark., complainant's western terminus and only point of direct interchange with the Missouri Pacific. As to traffic so moving, the latter carrier would be only an intermediate or delivering line."

In its opinion the Commission said further:

"As to the question of public interest, the Missouri Pacific asserts that the traffic gained by complainant through the establishment of the additional routes would be primarily at its expense; that it is not paying dividends, nor earning a fair return on its property investment. The Missouri Pacific contends that we cannot lawfully grant the relief here sought solely on the ground of complainant's financial necessity, and that the public interest referred to in the statute is that of the shipping public in reasonable, expeditious routes.

"Such a narrow conception of the public interest we are unable to adopt. It should be remembered that in their present form the provisions of section 15, governing the establishment of through routes and joint rates, were enacted as part of the Transportation Act of 1920, and that they lay upon us the mandatory duty of establishing such routes and rates as may be found to be necessary or desirable in the public interest, whereas the corresponding statutory provisions in effect prior thereto did not."

The Commission further said in that report:

"The need of complainant and the benefit which it would derive from the proposed routes far outweigh any possible adverse effect upon the Missouri Pacific from the establishment of such routes. However, it is unnecessary in this case to rely solely upon the financial needs of complainant, for the reasons stated below.

"In Ft. Smith, S. & R. I. R. R. Co., supra, it was found that complainant's line was economically operated and of great benefit to the country which it serves, although its revenues had been insufficient to meet its operating expenses and fixed charges. As further pointed out in that report, the distance between Memphis, Tenn., and Ft. Smith, over the route which complainant seeks to have established, is approximately the same as that over the Missouri Pacific alone, and there is nothing to show that any of the other routes sought would be unduly circuitous. Some of them would be shorter than existing routes. At the hearing in No. 13850, a number of shippers along complainant's line as well as from points served by the Paris branch of

21 F.(2d)—23

the Missouri Pacific, testified for complainant, and there is ample proof that the routes sought would be of value to those shippers in many respects.

"Upon further consideration of the record, we are of opinion and find that the through routes and joint rates prayed for in the complaint and more particularly described in the order attached hereto are desirable, in the public interest, and an order requiring their establishment will be entered."

As sustaining its findings and conclusion, the Commission relies upon the cases of Dayton-Goose Creek R. Co. v. U. S., 263 U. S. 456, 44 S. Ct. 169, 68 L. Ed. 388, 33 A. L. R. 472, and United States v. Abilene & S. R. Co., 265 U. S. 274, 44 S. Ct. 565, 68 L. Ed. 1016. In the first of the above cases the Supreme Court was considering the constitutionality of the recapture paragraphs of the Transportation Act of 1920. In the second of those cases the court was considering the question of division of joint rates and, in making such division, the right of the Commission to take into consideration the financial needs of a weaker road. Neither one of those two propositions is involved here. The portions of the Transportation Act applicable to the facts in this case are paragraphs 15 (3) and 15 (4) of section 418 of the Transportation Act of 1920, 41 Stat. 485 (49 USCA § 15).

Paragraph 15(3) authorizes the Commission to establish through routes, when deemed necessary by it, or desirable in the public interest. Paragraph 15 (4) is a limitation on the authority granted in paragraph 15(3). That limitation reads as follows:

"In establishing any such through route the Commission shall not (except as provided in section 3, and except where one of carriers is a water line), require any carrier by railroad, without its consent, to embrace in such route substantially less than the entire length of its railroad and of any intermediate railroad operated in conjunction and under a common management or control therewith, which lies between the termini of such proposed through route, unless such inclusion of lines would make the through route unreasonably long as compared with another practicable through route which could otherwise be established; provided, that in time of shortage of equipment, congestion of traffic, or other emergency declared by the Commission it may * * * establish temporarily such through routes as in its opinion are necessary or desirable in the public interest."

It is clear that the order of the Commission does not come within the proviso above

quoted, because the emergency has not been found by the Commission. The Commission has expressly found that the through lines of the Missouri Pacific were not unreasonably long, so as to require the route sought to be established in the order. If either Ft. Smith or Paris is the western terminus of the proposed route, the Missouri Pacific has through lines to each one of those points from all Eastern points involving interstate traffic. In the order of the Commission all of these lines are excluded from consideration, except the branch line from Ft. Smith to Paris. The order embraces substantially less than the entire length of the railroad of the Missouri Pacific between the eastern and western termini of the road involved in the order.

The proviso in the order, to the effect that no carrier shall be required to participate in any through or joint rates which would require it to surrender possession of traffic which it had originated or received from a connecting carrier, does not meet the proposition. The question is the propriety and legality of the inclusion of the Parish branch in the proposed through line. That question cannot be met by an exception with regard to the surrender of traffic. The establishment of a through route is one thing; the surrender of traffic after such route has been established is another thing. The former cannot be made dependent upon the latter. The proviso in the latter disregards the inhibition of section 15 (4). It ignores the existence of the lines of the Missouri Pacific from all of the eastern points involved.

The conclusion reached by the Commission, as set forth in its order, would in effect insert a new proviso in paragraph (4), section 15 of the Interstate Commerce Act. Such new proviso would appear just preceding the present existing proviso and would read substantially as follows: Provided, that the foregoing limitation on the power of the Commission shall not be in effect when the Commission is establishing a through route which may compel a railroad to short-haul itself, if such through route is limited to traffic not originated by such railroad, and not in its earlier possession. To read such a proviso into the present statute is, we think, legislation and not construction. If such a proviso is desirable, we think it is for the Congress to promulgate it, not the courts.

[2] The Commission has taken Memphis as a representative point. On west-bound traffic from that point under the order of the Commission, to enable the Subiaco to secure 46 miles of haul, the Missouri Pacific must lose nearly 300 miles and the Rock Island secures over 200 miles. It does not appear that the public interest requires that the Rock Island should have the traffic at the expense of the Missouri Pacific. In addition to that loss of haul, to make the order effective, the Missouri Pacific must contribute the use of its branch line. The general term, "public interest," as used by the Commission in its concrete application, means the securing of additional revenue to the Subiaco. The public interest in the maintenance of the Subiaco as a part of the transportation system of the country does not justify the taking of a part of petitioner's line and using it as an instrumentality for producing income for the Subiaco in competition with and to the detriment of the petitioner. There might be an emergency which, under the authority given in the proviso of section 15 (4), would authorize the establishment temporarily of such a route; but that emergency has not been found, and the order of the Commission does not purport to be a temporary order.

The Commission finds that "the need of complainant [Subiaco] and the benefit which it would derive from the proposed rates far outweigh any possible adverse effect upon the Missouri Pacific from the establishment of such routes." This case goes further than the Goose Creek and Abilene Cases. In the former the recapture clause of the Transportation Act was held applicable to the cases of a carrier's revenue over "a fair net operating income upon the value of its properties which are being devoted to transportation." The court further said:

"By investment in a business dedicated to the public service the owner must recognize that, as compared with investment in private business, he cannot expect either high or speculative dividends, but that his obligation limits him to only fair or reasonable profit."

In the Abilene Case, in considering an order of the Commission with regard to a division of the rates, the Supreme Court said:

"It is settled that, in determining what the division should be, the Commission may, in the public interest, take into consideration the financial needs of a weaker road, and that it may be given a division larger than justice merely as between the parties would suggest 'in order to maintain it in effective operation as part of an adequate transportation system,' provided the share left to its connections is 'adequate to avoid a confiscatory result.'"

In these two cases the question of securing traffic for a weaker road did not arise. The point was the division of the income among carriers, all of which participated in

the traffic. In such a division it was held that a weaker road could be favored; that is, its share of the income could be based upon facts other than the length of its mileage. In this case it was recognized that, before something could be taken from one carrier and given to another, it must appear that the former could retain such an amount as would be a fair return upon the value of its property used in the transportation of the traffic.

In this case the taking is justified upon the ground that in the operation under the order the Subiaco will gain more than the Missouri Pacific will lose. This does not appear to be a sufficient reason.

The Commission also makes the following findings:

"It should be noted that complainant expressly disclaims the right to participate in routes which would deprive an initial carrier of a long haul. From most of the points of origin involved, routes in accordance with complainant's prayer can be established over which traffic may move without passing over the Missouri Pacific rails until it reaches Paris, Ark., complainant's western terminus and only point of direct interchange with the Missouri Pacific. As to traffic so moving, the latter carrier would be only an intermediate or delivering line."

The distinction made between initial and intermediate and delivering carriers is abstract. The Commission recognizes the right of a carrier to handle traffic in its possession, and it states that a carrier has no right to traffic still in the possession of connecting lines. The result of the reasoning is that, if routes may be established by which traffic may be so handled that it will not pass over the Missouri Pacific rails until it reaches Paris, that road can have no legal ground for complaint. That such routes may be established is no doubt true, but the fact still remains that from the points considered, St. Louis, Cairo, Memphis, and New Orleans, the Missouri Pacific has other lines to Paris, Ark., by way of Ft. Smith. The essential point here is whether or not the Missouri Pacific, under the circumstances, can be compelled to join in establishing such routes, when it has lines available which will give to it the longer haul. The Commission did not make the findings which would authorize it to disregard the longer lines of the Missouri Pacific, and to compel that company to contribute its Paris branch to the making of an additional through line.

The preliminary injunction heretofore granted will be made permanent.