## ARMOUR & COMPANY ET AL. *v.* CITY OF DALLAS ET AL.

### APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF TEXAS.

No. 149. Argued January 18, 1921.—Decided February 28, 1921.

1. Where a city and a railway company agreed for the removal of the railway's main tracks from a busy street to another location, to promote the public safety and convenience and the operation of the railway, and owners of abutting property alleged that the change, by depriving them of their switch connection, would largely destroy the value of their expensive plant, in violation of their constitutional rights of contract and property, *held*, that the case was not one for

relief by injunction, and that the plaintiffs had a full and complete remedy in an action at law for damages. P. 286.

2. The District Court should not enjoin the performance of a city's contract, as void under the city charter, where the same question is involved in a taxpayer's suit, instituted in the state court by the same parties and still pending, in which a temporary injunction had been granted and is still in force. P. 286.

Affirmed.

THIS was a direct appeal from a decree of the District Court which dismissed, upon the merits, a bill brought by the appellants to enjoin, upon constitutional grounds, the removal of certain railway tracks in the City of Dallas. The facts are stated in the opinion.

*Mr. Francis Marion Etheridge,* with whom *Mr. Ralph W. Shauman, Mr. Samuel B. Cantey,* and *Mr. Joseph Manson McCormick* were on the brief, for appellants:

Their argument on the principal point decided was expressed as follows:

The fact, if it be a fact, that the continued use of Pacific Avenue by the Railway Company by the running of a hundred heavy trains over it every twenty-four hours is incompatible with the safety and convenience of the public, constitutes no answer to the proposition that the restricted use of Pacific Avenue by the maintenance and operation of the switch track serving appellants' plant will not operate injuriously upon the public interest. There is not a scintilla of evidence in the record showing or tending to show that such restricted use of Pacific Avenue will in the least interfere with the safety or convenience of the public. Such being the state of the record, it is not conceivable that appellants should be denied appropriate remedy for the enforcement of their legitimate contract, protected, as it is, by the due process and obligation clauses of the paramount law. It is obvious that the damages incident to the removal of the switch track, which must necessarily result in rendering appellants' plant

valueless and in terminating the conduct of its profitable business, are incapable of ascertainment. Appellants' equities are very great.

They are entitled to have their contract rights specifically enforced by an injunction. *Owensboro* v. *Cumberland Telephone Co.*, 230 U. S. 58; *Emporia* v. *Atchison, Topeka & Santa Fe Ry. Co.*, 94 Kansas, 718; *Taylor* v. *Florida East Coast Ry. Co.*, 54 Florida, 635; *International & Great Northern Ry. Co.* v. *Anderson County*, 106 Texas, 60; 246 U. S. 424; *H. & T. C. Ry. Co.* v. *Ennis*, 201 S. W. Rep. 256; *Harper* v. *Virginian Ry. Co.*, 76 W. Va. 788; *McKell* v. *Chesapeake & Ohio Ry. Co.*, 186 Fed. Rep. 39; *American Malleables Co.* v. *Bloomfield*, 83 N. J. L. 728; *Southern Ry. Co.* v. *Franklin & P. Ry. Co.*, 96 Virginia, 693; *Raphael* v. *Thames Valley Ry. Co.*, L. R. 2 Ch. 147; *Greene* v. *West Cheshire Ry. Co.*, L. R. 13 Eq. 44; *Jacksonville &c. Ry. Co.* v. *Hooper*, 160 U. S. 527; *Union Pacific Ry. Co.* v. *Chicago, Milwaukee & St. Paul Ry. Co.*, 163 U. S. 564, 600; *Atlanta W. P. Ry. Co.* v. *Camp*, 130 Georgia, 1; *Columbus Ry. Co.* v. *Columbus*, 249 U. S. 399.

*Mr. Thomas J. Freeman* and *Mr. James J. Collins*, with whom *Mr. Allen Charleton, Mr. Carl B. Calloway* and *Mr. Rhodes S. Baker*, were on the briefs, for appellees.

MR. JUSTICE BRANDEIS delivered the opinion of the court.

In 1872 the Texas and Pacific Railway Company built its single track main line to the west on a street in the village of Dallas, then as now called Pacific Avenue. In 1890 the City granted to the Company a fifty-year franchise to double track its railroad on that street. In the latter year the population of Dallas was 35,057; now it is 158,976;[1] and the existence and operation of the rail-

---

[1] 12th Census, Vol. I, p. 430; U. S. Census Bureau, Population of Cities Having 25,000 Inhabitants or More, 1920.

road on the Avenue has become a serious menace to life and limb, a great inconvenience to the whole people, burdensome to the Railway, and an injury to neighboring property. North of the Avenue lie largely the residential sections of the City; adjacent and to the south, largely business sections. A part of the Avenue is in the heart of the City. There six of the leading business streets —great thoroughfares—cross it; and on two of them street cars cross the railroad at grade. Two other much travelled streets are parallel. One of these, which is only two hundred feet distant, is the principal business street of the City. The number of trains operated daily over the Avenue had risen in 1918 to more than one hundred; and there were, in addition, switching operations to many neighboring industries. Trains are now longer—some of them consisting of eighty freight cars; and they occasion serious interruption to street traffic. The necessary use of larger engines, due partly to a heavy grade, results in much noise, smoke and cinders. Regulations concerning operation of trains imposed by the City in the interests of safety were necessarily severe; and had proved expensive and embarrassing to the Railway. Still further safeguards and restrictions upon operation appeared to be necessary. Plans were proposed for putting the tracks in subways, for elevating them and for eliminating the grade crossings; all of which the City confessedly had power to require of the Railway. But none of these projects appeared to offer a satisfactory solution of the problem. Finally a plan was worked out for the removal of the tracks from this part of the Avenue for a distance of nearly a mile and for diverting the trains to the line of another railroad with which it was proposed to make connections. This involved establishing a wholesale trade district elsewhere.

This plan proved acceptable to the Railway, its receiver, the City and most of the real estate owners affected. In order to carry out the plan the Wholesale District Track-

age Company was organized; and this corporation, the City, the Railway and its receiver entered into a contract under which the improvement was to be made. Then Armour & Company, owner of a plant served by a switch track connecting with the main line on the Avenue, and its lessee, brought this suit in the District Court of the United States for the Northern District of Texas against all the parties to the contract seeking to enjoin its performance and specifically the removal from Pacific Avenue of the tracks which connected with their switch track. Jurisdiction of the federal court was invoked on the ground that the action proposed would deprive plaintiffs of their property without due process of law and impair the obligation of their contracts in violation of the Federal Constitution. After full hearing on the merits a decree was entered dismissing the bill with costs. The case comes here by direct appeal under § 238 of the Judicial Code.

*First.* The basis of the plaintiffs' principal claim is this: In 1912 Armour & Company, being desirous of erecting a plant in Dallas, made a contract for the purchase of a lot on the Avenue, the purchase to be conditioned upon the Railway securing from the City a franchise to lay a switch connecting the lot with its main track on the Avenue and upon Armour & Company then securing from the Railway an agreement to build and maintain the switch. Upon satisfying itself through negotiation with officials of the City and of the Railway that these conditions would be complied with, Armour & Company completed the purchase of the lot. The City then passed an ordinance granting such a franchise to the Railway for the period of twenty years, conditioned, among other things, upon Armour & Company dedicating about ninety square feet of their land to the public to round the two corners of their lot. The small parcels were dedicated; the plant was erected; the switch was built by the Railway; and over the switch Armour & Company's lessee customarily receives

about 600 cars of freight a year. The plaintiffs contend that the switch franchise, granted by the City to the Railway, was entered into for Armour & Company's benefit; that it was, in effect, a contract with them; that the City and the Railway are powerless under the Federal Constitution to abrogate that contract either directly by surrendering the switch franchise or, indirectly, by removing the main track with which the switch connects; and that the plaintiffs are entitled to an injunction, because the plant, which cost nearly $80,000 to build, would lose most of its value if deprived of its rail connection.

To this claim several answers are made: (1) That the City did not make any contract with Armour & Company and under its charter would have been without power to do so; (2) that the Railway did not make any contract with Armour & Company to maintain the side track and that it had been authorized to remove the tracks from Pacific Avenue by the Railroad Commission, under appropriate legislation, on the ground that it would "serve the public interests by promoting the public safety and convenience;" (3) that the plaintiffs have already sought and been denied, as against the Railway and its receivers, the same relief here applied for; having intervened for that purpose in the original suit brought for appointment of the receiver in the District Court of the United States for the Western District of Louisiana; that the decree of the District Court therein dismissing its petition asking the same relief had been affirmed by the United States Circuit Court of Appeals for the Fifth Circuit, *Armour & Co.* v. *Texas & Pacific Ry. Co.*, 258 Fed. Rep. 185; and that this court had denied Armour & Company's petition for writ of certiorari, 251 U. S. 551; (4) that even if the franchise had purported to grant an absolute right to maintain the tracks on Pacific Avenue it would have been subject to the fair exercise by the State, through the municipality as its agent, of the police power to promote the public safety; and that, under

the circumstances, removal of the tracks was essential for
this purpose since the tracks could not appropriately be
placed underground or be elevated. See *Denver & Rio
Grande R. R. Co.* v. *Denver,* 250 U. S. 241, 244; *Erie R. R.
Co.* v. *Board of Public Utility Commissioners,* 254 U. S.
394; (5) that the franchise for the switch was not absolute;
that power of revocation had been expressly reserved by
clauses in the ordinance which made the franchise subject
to the City's charter powers and provided "that in the
event the said Railway Company shall be required to
abandon, to elevate or to place in subways said main
tracks on Pacific Avenue, then in that event this franchise
shall be subject thereto"; and that the Railway was so
required; (6) that even if plaintiffs had the legal right
which they assert, they were not entitled to relief in equity
by injunction; since an action at law would afford an ade-
quate remedy and an injunction would interfere with a
paramount public interest.

It was on the last of these grounds that the Circuit
Court of Appeals in *Armour & Co.* v. *Texas & Pacific Ry.
Co.,* 258 Fed. Rep. 185, unanimously affirmed the decree
dismissing the intervening petition. Among the judges
sitting upon appeal in that case was the Circuit-Judge who
entered the decree in this case here under review. He does
not appear to have written an opinion in this case but
presumably he dismissed this bill also on that ground. For
it is clear that the case is not one for equitable relief. If the
plaintiffs as abutting property owners have any legal right
which is interfered with, an action at law for damages will
afford them a full and complete remedy. See *Texas &
Pacific Ry. Co.* v. *Marshall,* 136 U. S. 393, 405; *Beasley* v.
*Texas & Pacific Ry. Co.,* 191 U. S. 492, 496–7. We have no
occasion, therefore, to consider any of the other reasons
urged for affirming the decree.

*Second.* Plaintiffs urge, apparently as taxpayers, this
additional ground for relief: They allege that the contract

entered into by the City is void and that its performance should be enjoined; because the contract therefor was not countersigned by the Auditor and the expense thereof was not charged to the proper appropriation as required by the City's charter. It was agreed that the plaintiffs had brought a suit on this ground in a state court on behalf of themselves and of other taxpayers of Dallas against the City and others, that it had obtained upon an *ex parte* hearing a temporary injunction restraining the City from carrying out the contract, that this suit was pending on appeal before the Court of Civil Appeals for the Fifth Supreme Judicial District of Texas when this case was heard below, and that the temporary injunction, so far as appears, is still in force. The District Court was clearly right, under the circumstances, in refusing to grant an injunction on this ground.

*Affirmed.*