## ST. LOUIS–SAN FRANCISCO RY. CO. v. LAWRENCE et al.

District Court, N. D. Oklahoma. March 12, 1928.

No. 207.

C. B. Stuart and Ben Franklin, both of Oklahoma City, Okl. (Edwin Dabney, Atty. Gen., E. T. Miller, of St. Louis, Mo., and M. K. Cruce, of Oklahoma City, Okl., of counsel), for complainant.

T. L. Blakemore and D. A. McDougal, both of Sapulpa, Okl. (Ames, Lowe & Cochran, of Oklahoma City, Okl., of counsel), for respondents.

Before VAN VALKENBURGH, Circuit Judge, and REEVES and KENNAMER, District Judges.

VAN VALKENBURGH, Circuit Judge. It appears from the bill of complaint that

more than 30 years ago the St. Louis-San Francisco Railway Company built and acquired lines of railroad extending from the cities of St. Louis and Kansas City, in the state of Missouri, to Afton, in the state of Oklahoma, at which point said lines of railroad united and extended in a single line in a southwesterly direction into the state of Oklahoma and the cities of Tulsa and Sapulpa in said state, and thereafter there were built lines of railroad extending south from said city of Sapulpa into the state of Texas to the city of Sherman in said state, and also a line of railroad extending west from said city of Sapulpa through Oklahoma City, Lawton, and to the city of Quanah in the state of Texas; that owing to the fact that, at the times of the construction of said lines of railroad, complainant herein received a large volume of its business from the vicinity of the city of Sapulpa and owing to the further fact that it appeared to those having to do with the construction of said lines of railroad at said times that the city of Sapulpa would become the business shipping center of its locality, complainant located, built, and constructed at the said city of Sapulpa certain railroad shops and a division point on said lines of railroad, and that said shops and division point have been maintained and operated at the said city of Sapulpa up to the time this suit was filed; that on the 1st day of November, 1916, complainant became the owner by purchase of the above-named lines of railroad and railroad shops, and has since owned and operated the same; that during the month of February; 1917, defendants J. F. Lawrence and C. C. Taylor, appearing on behalf of themselves, the Chamber of Commerce of the City of Sapulpa, and the citizens of said city, filed complaint with the Corporation Commission of the State of Oklahoma, for the purpose of preventing complainant from moving its said shops and division point from the city of Sapulpa to the city of Tulsa on its line of railroad; that thereafter, on the 15th day of February, 1917, the Corporation Commission of the State of Oklahoma issued its order temporarily restraining complainant from moving its said shops or division point as aforesaid. A partial hearing was had on this complaint and an adjournment taken. During that adjournment, in 1917, the Legislature of the State of Oklahoma passed the following act, now found as sections 3482, 3483, 3484, and 3485 of the Compiled Oklahoma Statutes of 1921:

"3482. * * * That no person, receiver, firm, company or corporation owning, operating or managing any line of steam railroad in this State shall be allowed to remove railroad shops or division points which have been located at any place in this state for a period of not less than five years without previously securing the permission of the Corporation Commission to make such removal."

"3483. * * * If, and when any such person, receiver, firm, company or corporation desires to remove any such railroad shops or division point described in Section One of this Act, it shall be his duty to file an application with the Corporation Commission setting forth the present location of such shops or division point and the reasons for such removal, and thereupon the Corporation Commission shall have full power and jurisdiction to entertain such complaint, but before hearing the same or making any order permitting such removal to be made, said cause shall be set down for hearing, not less than ten days' notice shall be given the city, town or village in which or at which such shops or division point have been maintained and after giving all parties interested a full and complete hearing in the premises the Commission may in its discretion permit or refuse such request for a removal."

"3484. * * * When an application is filed before the Commission for the removal of terminals or car shops, as provided in Section Two, the Commission shall hear evidence on the relative efficiency and expense of handling traffic through the proposed terminal as compared with the present facilities, and shall consider all other facts and circumstances affecting the various interests involved. In determining the adequacy of the present facilities the Commission shall consider the same increased by an expenditure equal to an amount necessary to remove the same to the proposed location or an amount equal to the necessary expenditure to establish such facilities at the new location. It is hereby further provided that the Commission shall hear evidence and shall make a finding of fact as to the sanitary and habitable conditions of the proposed location with reference to whether the same would endanger the health of the employés of the applicant or the health of their families. If the Commission should find that the sanitary or habitable conditions at the proposed location of said terminal facilities would endanger or injuriously affect the health of the employés of said applicant or their families, the Commission shall deny said application and order the said terminal facilities and car shops to remain at the present location."

"3485. * * * On any such hearing,

as provided in this act, the presumption shall be against the removal, and the burden of proof rest upon the applicant to show that such removal ought to be made."

Thereafter, no proceedings of any kind were had. It does not appear that any effort was made on the part of complainant to move its shops, if such had been contemplated.

The bill of complaint states further that conditions have so changed as to make it imperative on the part of the operators of said lines of railroad to locate extensive shops and yards at the city of Tulsa, and at a point therein known as West Tulsa, and to move said division point from the city of Sapulpa to the said city of Tulsa; that the latter city has developed into a city of approximately 125,000 inhabitants, and has become one of the largest, if not the largest, shipping centers in the state of Oklahoma; that immense oil fields and oil properties have been developed and constructed and are being operated in the vicinity of and in all directions from the city of Tulsa, which has become the center of such operations; that other industries, transacting great volumes of business, have been located, and are now being located, in said city, and in the vicinity thereof, and use said city as their shipping center; that the city of Sapulpa has developed only to a very minor degree, the population being stated at approximately 20,000 people; that very few of the industries operated, as hereinbefore set forth, use Sapulpa, or the terminals there located, as a shipping center; that the topography of the ground in the vicinity of the Sapulpa yards and shops will not permit the location and construction of sufficient facilities for the transaction of the shipping business necessary to be transacted at the shops and division point located in that vicinity; that it has been, and will continue to be, impossible for complainant to construct at Sapulpa sufficient shops and yards to transact its necessary business; that because of improved conditions of roadbed, bridges, etc., the increase of motive power, and the enlargement of engines and other equipment, it is now necessary to the proper conduct of business of complainant, as an interstate carrier, to increase the distances between its division points and large shops; that complainant is engaged extensively in interstate commerce, carrying a large volume of such commerce, both freight and passenger, from Kansas City, Mo., and points north and east, to Tulsa and other points within the state of Oklahoma, and to points south in the state of Texas, and from St. Louis, Mo., and points north, east, and south, to Tulsa and other points within the state of Oklahoma, and other states to the south; that the facilities and equipment, constituting the shops and division point herein described, are necessary and imperative to the transaction of its said interstate business; that a removal of its shops and division point to Tulsa, and a consolidation of said shops with the shops now located at Tulsa, will enable complainant to promote and aid its interstate commerce business by eliminating annually hundreds of thousands of dollars of operating expense; that among many other items it will be able to save in wages of employés approximately $200,000 per annum, in operating material and equipment, approximately $70,000 per annum, in fuel, power, and lights, approximately $25,000 per annum; that owing to the fact that it has been necessary for complainant to construct and maintain extensive shops and yards at Tulsa, in addition to the shops and yards at Sapulpa, if complainant is prevented from removing its said shops from Sapulpa to Tulsa, it will be necessary for complainant to maintain and operate, at great expense and loss, two extensive sets of shops and yards within 18 miles of each other, thus entailing great additional and needless cost and expense, resulting in great confusion and congestion of traffic, causing loss of time to shipments, and thus interfering with and placing a direct burden upon interstate commerce business; that in the proper conduct and operation of its railroad it becomes necessary from time to time for complainant to readjust its division points and to find better and more efficient, suitable, and convenient places for repair work and for keeping its rolling stock and other instrumentalities of its railway used in interstate commerce in proper condition; that these matters are purely managerial and necessary to be confided to such railway company the better to serve the public and its stockholders and investors. The foregoing are among the more important considerations urged by complainant in its bill as justifying the removal desired.

Anticipating this action on the part of complainant, the respondents, Lawrence and Taylor, appearing for themselves, the Chamber of Commerce of the City of Sapulpa, and the citizens of said city, procured from the Corporation Commission of the State of Oklahoma the following order:

"This cause coming on to be heard on this 29th day of December, 1926, upon motion of the complainants, and it appearing that the defendant is taking steps toward the removal of its shops and division point from the City

of Sapulpa in violation of the order of this Commission entered on the 5th day of February, 1917, and in violation of the Act of the Legislature passed in 1917, it is ordered by the Commission that said cause be set down for hearing on the 17th day of January, 1927, and that in the meantime, and until the further order of the Commission, the defendant be, and it is hereby prohibited from moving its shops or division point from the City of Sapulpa, from changing the runs of either its passenger or freight trains, or from taking any other steps towards changing its division point for either passenger or freight service from the said City of Sapulpa."

A hearing on this matter was set before the Corporation Commission for the 17th day of January, 1927. On January 11, 1927, complainant filed its bill against respondents herein charging that the statutes, hereinabove set forth, in so far as they are sought to be made applicable to the conditions hereinabove described, are unconstitutional, confiscatory, arbitrary, unnecessary, and void, and that as so applied they granted the Corporation Commission authority to issue orders and decide questions directly regulating, affecting, and constituting a burden on interstate commerce; that said orders are therefore beyond the authority of the Corporation Commission, and therefore void; and that respondents be enjoined from compelling complainant to submit to the jurisdiction of the Corporation Commission in the matters aforesaid, in order that complainant may not suffer irreparable injury and damage that it otherwise must suffer if prevented from removing its shops as aforesaid.

A temporary restraining order was issued, and a court, composed of the three judges now sitting, was convened for the hearing of the temporary injunction. At that hearing the crucial point submitted was the authority of the Corporation Commission of the State of Oklahoma over the matter in controversy. Conceiving this to be the only substantial contested issue, and that its speedy determination by the court of last resort was desired, and was for the best interest of both parties, the court addressed itself broadly to a decision of that question, and being of opinion that the power of location of shops and division points by an interstate railroad, as affecting its interstate traffic, was essential to the discharge of its obligations as an interstate carrier, and that the subjection of this right to state control would necessarily burden interstate commerce and countervail the spirit of the act to regulate commerce, as amended (49 USCA § 1 et seq.), granted the temporary injunction prayed. Unfortunately these reasons, stated orally in announcing our decision, were not preserved in the record presented to the Supreme Court (274 U. S. 588, 47 S. Ct. 720, 71 L. Ed. 1219), and thus that court, on appeal, was not made aware of the considerations which governed our action.

The Supreme Court being of opinion that the state law prescribing an important change in local transportation conditions, without application to the state commission, might be valid, considered it important that the demands of comity and courtesy should have been observed; that application to the Corporation Commission should have been made before resort to the injunctive process in the federal court, the presumption being that the commission would have granted the application for removal if the facts justified it and that irreparable injury to complainant for the short period deemed to be necessary for that hearing had not been made clearly to appear. The case therefore was reversed and remanded and the controverted point left undecided.

In their petition for appeal from the order granting the temporary injunction, respondents prayed "that the proper order touching security be made without superseding the decree referred to and they tender bond in such amount as the court may require." Accordingly complainant, as a condition to the granting of the temporary injunction, was required to give bond in the sum of $50,000, to cover such damages as might be sustained if it should result that that temporary injunction was improvidently granted. In the absence of supersedeas the interlocutory decree set the railway free to remove its shops, subject, of course, to their restoration to the city of Sapulpa if the case should ultimately be decided against it. Pending appeal the removal took place. After the coming down of the mandate from the Supreme Court, respondents filed motion for an order requiring complainant to restore the conditions with respect to shops and division point as they existed prior to the hearing on temporary injunction, and that further proceedings in the case should be stayed until that should be done. After full hearing this motion was denied, for reasons stated in the opinion of this court, filed November 28, 1927, 30 F.(2d) 454, to which reference is hereby made. At the hearing it was shown that the cost of such restoration would amount at least to $300,000; that if on final hearing the decree should favor complainant an additional expense of $300,000 would be

incurred in removing the shops and division point again to Tulsa.

It was the judgment of the court that the expenditure of removal should not be incurred until and unless the decision upon final hearing should make it necessary. Thereupon, the court ordered that "before further steps looking to a final hearing of this cause are taken, said plaintiff should make application to the Corporation Commission of the State of Oklahoma, to dissolve its restraining orders heretofore made restraining said plaintiff from removing its shops and division point from the City of Sapulpa to the City of Tulsa, and to ratify the action of said road in removing its said shops and division point during the pendency of this cause," and that "final hearing of this cause be suspended until the result of said application to the Corporation Commission be ascertained, and it is further ordered that this court shall and will retain jurisdiction of this cause so that any action, order or judgment may be taken or made by this court that may be necessary to protect the rights of any parties hereto."

Seasonably thereafter complainant made such application to the Corporation Commission and asked a hearing thereunder. Respondents, through their counsel, appeared before the commission and opposed any hearing upon the merits of the application until complainant had made the restoration of its shops and division point to Sapulpa, thereby, in effect, renewing before the commission the motion to that effect which had been denied by this court, as above stated. The Corporation Commission ruled with respondents and declined to hear complainant's application until such restoration was made. The result of these proceedings was reported to this court in a supplemental bill of complaint, in which complainant prayed relief as in its original bill and for such other relief, either general or special, to which, in good conscience and equity, it might be entitled in the premises.

Thereupon, to the original bill, and this supplemental bill, respondents filed their motion to dismiss for the stated reason that the same "do not state facts sufficient to constitute a cause of action against the defendants or to entitle the complainant to equitable relief." At the hearing thereon both parties announced their desire that the case be submitted for final decree upon this motion without further pleading or presentation. Arguments were made, authorities submitted, and a submission was made with that understanding.

At the argument counsel for respondents urged two propositions in support of their motion: First, that the bills show on their face that complainant has not exhausted its remedy before the state tribunal; that until it has done so it has no standing in this court. Second, that the Oklahoma statutes in controversy are constitutional, and the authority of the Corporation Commission thereunder is controlling. Reliance is placed upon the decision of the Supreme Court on the former appeal (Lawrence v. St. Louis-San Francisco Railway Co., 274 U. S. 588, 47 S. Ct. 720, 71 L. Ed. 1219) and upon the following cited cases: Western & Atlantic R. R. v. Georgia Public Service Commission, 267 U. S. 493, 45 S. Ct. 409, 69 L. Ed. 753; Henderson Water Co. v. Corporation Commission, 269 U. S. 278, 46 S. Ct. 112, 70 L. Ed. 273; International & Great Northern Ry. Co. et al. v. Anderson County et al., 246 U. S. 424, 38 S. Ct. 370, 62 L. Ed. 807. Other cases are, of course, cited in the original briefs, but the foregoing constitute the main reliance upon the question presented by this motion.

In the opinion of the Supreme Court in Lawrence v. St. Louis-San Francisco Railway Co., supra, the considerations which governed the Supreme Court were expressly stated to be of weight on application for a preliminary or temporary injunction. The concern of that court was that conflict and irritation between state and federal authorities should be avoided whenever possible; that the federal power be not exerted unnecessarily, hastily, or harshly; that the demands of comity and courtesy, as well as of the law, be deferred to; and that the necessity of a temporary order to avoid irreparable injury and loss should clearly appear. The court did not undertake to determine whether the Oklahoma statute, or the action of the commission thereunder, was obnoxious to the federal Constitution. The jurisdiction of this court to proceed to final hearing was recognized. In the opinion it is stated:

"No right or interest of the Railway would have been prejudiced by participating in the hearing before the Commission and awaiting the result thereof. The Railway would not thereby have waived its right to contest in the federal court the validity of the Oklahoma law. * * *

"The Railway asserts that the removal would result in an improved service and in economy in operation. If this appeared to be true, it was the duty of the Commission, under the Oklahoma law, to authorize the removal, unless thereby the health of the

employees of the Railway or of their families was imperiled. It is not to be assumed that the Railway proposed to remove the shops to an unhealthy location. * * *

"The effect of the Commission's restraining order was merely to keep things in statu quo until the final hearing in the federal court. * * *

"We have no occasion to determine whether the Oklahoma Act is obnoxious to the Federal Constitution. * * *

"The delimitation of the respective powers of the two governments [state and national] requires often nice adjustments. The federal power is paramount. But public interest demands that, whenever possible, conflict between the two authorities and irritation be avoided."

■ There is nothing in this opinion which can be construed as a command that the matter must be referred to the Corporation Commission as a condition precedent to final hearing. But in order that the rule announced by the Supreme Court should be observed in spirit, as well as in letter, and that full deference should be accorded to the demands of comity and courtesy, we exacted application to the commission before we would enter upon a final hearing of the case. The commission has declined to hear the application until the performance of a condition which it is without power or authority to enforce. The denial by this court of present restoration was not made out of disrespect for the commission, nor in disregard of its legitimate authority in the premises. It was made in the exercise of what we deemed to be a sound discretion, under the circumstances now existing, for the prevention of what might be unnecessary expenditure, and pursuant to a jurisdiction which had attached, which was expressly retained, and of which this court could not be collaterally deprived. By making its application in good faith, and the refusal of the commission to entertain that application, complainant has exhausted its remedy before that tribunal in a legal sense. Since this result was brought about at the instance and demand of respondents, they can no longer be heard to insist upon a decision which they opposed and prevented. We proceed to a consideration of the merits of the controversy.

Western & Atlantic Railroad v. Georgia Public Service Commission et al., 267 U. S. 493, 45 S. Ct. 409, 69 L. Ed. 753, had to do with a bill to enjoin a state commission from enforcing an order requiring the plaintiff railroad to maintain service on an industrial switch track. Intrastate switching service was involved. It was held that under section 402, Transportation Act (49 USCA § 1), a railroad company could not appeal from an order of a state commission requiring it to continue switching service on the ground of discrimination until it had invoked the investigation and decision of the Interstate Commerce Commission on this point. Also, the power to order its establishment or abandonment of such side tracks, though employed largely for its interstate commerce, is not with the Interstate Commerce Commission, but with the states. Under the act the Federal Commission cannot order abandonment of service exclusively intrastate. State of Texas v. Eastern Texas Railroad Co. et al., 258 U. S. 204, 42 S. Ct. 281, 66 L. Ed. 566. This case, therefore, has no application to the point now under consideration.

Henderson Water Co. v. Corporation Commission of North Carolina et al., 269 U. S. 278, 46 S. Ct. 112, 70 L. Ed. 273, was an appeal under section 266 of the Judicial Code (28 USCA § 380) from an order refusing temporarily to enjoin the enforcement, as confiscatory, of rates established by the commission until the period of test prescribed in the order had expired. The commission had allowed a partial increase and reserved to the water company the right to apply for further relief at the end of a test period. It was held that the company must exhaust its remedy with the commission before suing in the District Court. This case announces a principle frequently laid down in rate cases, and has no bearing upon the issue now before us.

International & Great Northern Railway Co. et al. v. Anderson County et al., 246 U. S. 424, 38 S. Ct. 370, 62 L. Ed. 807, was decided upon the facts peculiar to that case. It was held that foreclosure and sale of a railroad in a federal court will not relieve the purchaser from a contractual or statutory duty, which rested on its predecessors under state law, to maintain offices and shops at a particular place. There the petitioning railroad was organized under the laws of the state of Texas, and was, therefore, a Texas corporation. The Office-Shops Act of Texas (Acts 21st Leg. c. 106), containing a prohibition against removal of offices and shops located by contract within a county in consideration of county bond aid, was in effect at the time the railway company took out its charter under general laws that expressly subjected it to the limitations imposed by existing law. It was made a condition of incorporation that this restriction should be accepted. The decision was expressly based

upon the special facts there appearing. The court said: "We are not prepared to say that in this instance the State has transcended its powers."

The case of Texas & Pacific Railway Co. v. Marshall, 136 U. S. 393, 10 S. Ct. 846, 34 L. Ed. 385, more nearly applies to the case under consideration. In that case it appears that:

"The City of Marshall agreed to give to the Texas and Pacific Railway $300,000 in County bonds, and 66 acres of land within the city limits for shops and depots; and the company, 'in consideration of the donation' agreed 'to permanently establish its eastern terminus and Texas offices at the City of Marshall,' and 'to establish and construct at said city the main machine shops and car works of said railway company.' The city performed its agreements, and the company, on its part, made Marshall its eastern terminus, and built depots and shops, and established its principal offices there. After the expiration of a few years Marshall ceased to be the eastern terminus of the road, and some of the shops were removed. The city filed this bill in equity to enforce the agreement, both as to the terminus and as to the shops; Held,

"(1) That the contract on the part of the railway company was satisfied and performed when the company had established and kept a depot and offices at Marshall, and had set in operation car works and machine shops there, and had kept them going for eight years and until the interests of the railway company and of the public demanded the removal of some or all of these subjects of the contract to some other place;

"(2) That the word 'permanent' in the contract was to be construed with reference to the subject matter of the contract, and that, under the circumstances of this case it was complied with by the establishment of the terminus and the offices and shops contracted for, with no intention at the time of removing or abandoning them;

"(3) That if the contract were to be interpreted as one to forever maintain the eastern terminus, and the shops and Texas offices at Marshall, without regard to the convenience of the public, it would become a contract that could not be enforced in equity;

"(4) That the remedy of the city for the breach, if there was a breach, was at law."

■ The rule announced in this case has never been modified nor impaired. It is cited with approval in Armour & Co. et al. v. City of Dallas et al., 255 U. S. 280, 41 S. Ct. 291, 65 L. Ed. 635. To us it seems inconceivable

that the managerial control of an interstate railway over the location of its shops and division points, for the purpose of co-ordinating its facilities in the discharge of its interstate commerce business, should be made subject to the control of the individual states acting in the interest of local communities and to the disadvantage of public convenience generally. It has been consistently held that interstate rates cannot be made the subject of private contract. New York, New Haven & Hartford R. R. Co. v. Interstate Commerce Commission, 200 U. S. 361, 26 S. Ct. 272, 50 L. Ed. 515; Armour Packing Co. v. United States, 209 U. S. 56, 28 S. Ct. 428, 52 L. Ed. 681.

The same principle, in our judgment, applies generally to all essential instrumentalities of interstate commerce.

■ As said by the Supreme Court, in the instant case, the federal power is paramount. Upon the undisputed allegations of the bills, with the attending presumptions, the removal of these shops and this division point is demanded in the interest of economy in operation and improved service to the shipping and traveling public. The policy of the railway in this regard accords with the spirit of latest progressive legislation for maintaining the efficiency and economical operation of an interstate commerce railway system which serves both the states and the nation. Dayton-Goose Creek R. Co. v. United States, 263 U. S. 456–485, 44 S. Ct. 169, 68 L. Ed. 388, 33 A. L. R. 472.

It follows that the motion to dismiss will be overruled, and that in conformity with the terms of this submission a decree will be entered in favor of complainant.

All concur.