## SEABOARD AIR LINE RY. CO. v. ATLANTA, B. & C. R. CO.

Circuit Court of Appeals, Fifth Circuit.
November 18, 1929.

No. 5612.

Robert S. Parker, of Atlanta, Ga., and W. W. Dykes, of Americus, Ga. (Randolph, Parker & Fortson and Robt. S. Parker, all of Atlanta, Ga., and W. W. Dykes, of Americus, Ga., on the brief), for appellant.

Morris Brandon and John A. Hynds, both of Atlanta, Ga. (Brandon & Hynds, of Atlanta, Ga., on the brief), for appellee.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

WALKER, Circuit Judge. This was a bill filed by the appellant, Seaboard Air Line Railway Company, against the appellee, Atlanta, Birmingham & Coast Railroad Company, seeking the specific enforcement of the hereinafter set out provision of a contract entered into in 1901 between the Seaboard Air Line Railway and the Brunswick & Birmingham Railroad Company. That contract provided for the line of the Brunswick & Birmingham Railroad Company crossing at grade the main line controlled and operated by the Seaboard Air Line Railway at a point near Thalman, Ga., and contained the following provision:

"The said Brunswick and Birmingham Railroad Company, party of the second part, further covenants and agrees that it will, at its own cost and expense, provide from time to time hereafter, and maintain at all times, and both by day and by night, such watchmen, semaphores, watch-boxes, towers, automatic signals, interlocking and derailing switches, apparatus and safeguards as may, in the opinion of the First Vice-President and General Manager of the said Seaboard Air Line Railway, party of the first part, be considered proper and necessary for the protection of the trains of the parties to this agreement, or to those of any other party or parties that may, at any time, use the track or tracks of either party and the crossing provided for herein, for the passage of locomotives, engines or cars, and the duties of such watchmen shall be exclusively those arising out of the management of such crossing and they shall not be employed by either party for any other purpose whatsoever."

The bill alleged that appellant is the successor in the ownership, control, and use of the track and line of railroad running south from Savannah, Ga., to Jacksonville, Fla., by Thalman, Ga., and that appellee is the successor in ownership, control, and use of the track and line of railway extending from Atlanta, Ga., to Brunswick, Ga., by Thalman, including the crossing at Thalman acquired under the above-mentioned contract. In January, 1927, the appellant, through M. H. Cahill, its vice president, who performed the duties of vice president and general manager, demanded of the appellee that the latter furnish and erect at the point of crossing at Thalman, Ga., at its expense, an interlocking plant adequate for the protection of all trains using that crossing, that plant to be constructed in strict conformity to plans and specifications approved by appellant's chief engineer. Upon appellee's refusal to comply with that demand, the bill in this case was filed. The granting of the relief sought was resisted on sundry grounds, including the grounds that the contract provision sought to be specifically enforced is "incomplete, in that the thing to be done is not distinctly and clearly specified; that that provision is uncertain in that the things to be performed are left to the opinion of certain individuals, or to individuals who happen at the time to hold certain offices, and their opinions may change from year to year, and from day to day;" and that a compliance by appellee with said demand would materially lessen its ability to

furnish railroad facilities to towns and communities through which its line of railway runs, would lessen its ability adequately to serve the public, and would cripple it in the performance of its public duties.

The evidence showed the following: "Thalman is hardly worth being called a town. There are a depot and several stores. * * * The country is level. You can see a train on that crossing as far as your sight will carry, barring conditions of fog." There has been no accident at the crossing at Thalman since 1911. That accident resulted in damaging one car in the amount of approximately twenty or twenty-five dollars. In 1915 the average number of trains operated daily over that crossing by appellee's predecessor was four passenger trains and four and three-tenths freight trains. In 1920 the average number of trains so operated by appellee's predecessor was four passenger trains and three and four-tenths freight trains. In 1928 the average number of trains operated daily by appellee over that crossing was two passenger trains and two and eight-tenths freight trains. The erection of the interlocking plant called for by the demand of the appellant would cost $25,000; the maintenance of it would cost $2,500 a year, and the operation of it would require three levermen, working in shifts, whose wages would amount to from $5,000 to $5,500 a year. If the annual expenses of maintenance, depreciation and operation are capitalized, the amount, added to the original cost, would be in excess of $150,000. The appellee was organized in the fall of 1926, and took over the property of the Atlanta, Birmingham and Atlantic Railroad Company, which for a number of years was operated by a court receiver. In the organization of the appellee, which acquired the property through a judicial sale in the receivership suit, no funds were provided for it. The result of its operation of the property during 1927 was a deficit of $66,000. In 1928 the deficit was $188,000. There was no evidence in conflict with the following part of the testimony of B. L. Bugg, appellee's president: "I figure that it would actually cost in money out of pocket twenty-five thousand dollars to build this plant, and the interest on one hundred and fifty thousand dollars altogether. That fund is needed to serve the public on our road. The public service would suffer to the extent of funds diverted from the maintenance and operation of the property for such a service. That fund is needed principally for the maintenance of tracks, rails, cars, ties, ballast and ditching. We have no other funds available that we could use for the purpose. If this fund were used in building an interlocking plant our public service would suffer to that extent."

By the contract provision sought to be specifically enforced, appellee's predecessor agreed to do, not a specified thing, but any or all of several enumerated things as may, in the opinion of a described official or described officials, be considered proper and necessary for the protection of trains of the parties to the agreement. It is apparent that that provision, as a result of its conferring on a named official, or one or more other officials who performed the same functions for the same or another employer, an untrammeled right to determine in the future which of the enumerated things would be required to be done, and apparently the right to make other selections from time to time, was less certain as to what was or might be required to be done by appellee or its predecessor than it would have been if the contract itself had specified what was to be done for the protection of trains of the parties. To say the least, there is some basis for a contention that the provision in question, because of its lack of the requisite certainty, does not belong to the class of contracts of which equity would decree specific performance. Buzard v. Houston, 119 U. S. 347, 353, 7 S. Ct. 249, 30 L. Ed. 451; South Wales Railway Co. v. Wythes, 5 De G. M. & G. 880; 25 R. C. L. 218. But we do not pass on that contention, as we think that the court's refusal to grant the relief sought is justifiable on another ground.

In the exercise of its discretion, a court of equity may refuse specific enforcement of a valid contract where, by granting that relief, a paramount public interest will or may be interfered with. Beasley v. Texas & Pacific Ry. Co., 191 U. S. 492, 497, 24 S. Ct. 164, 48 L. Ed. 274; Armour & Co. v. Dallas, 255 U. S. 280, 286, 41 S. Ct. 291, 65 L. Ed. 635; Armour & Co. v. Texas & P. Ry. Co. (C. C. A.) 258 F. 185. Uncontradicted evidence indicated that the financial condition of the appellee is such that a probable result of requiring it to make the expenditures necessary for a compliance with the demand sought to be enforced would be to disable it from performing its duties to the public, including the duty of keeping its tracks and equipment in reasonably safe condition. It well may be considered that the interest of the public served by appellee's line, in its tracks, roadbed, and equipment being maintained in reasonably safe condition, is paramount to the interest of the appellant and the public served

by its railway in additional provision being made for the safety of such a crossing as the one in question, which in its existing condition is not shown to be a dangerous one. We think that in the circumstances disclosed there was warrant for the inference that a paramount public interest might be interfered with by granting the relief sought. This being so, the court's refusal to grant that relief was not reversible error.

The decree to that effect is affirmed.