LAWRENCE ET AL. *v.* ST. LOUIS-SAN FRANCISCO
RAILWAY COMPANY.

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA.

No. 894.   Argued April 20, 21, 1927.—Decided May 31, 1927.

1. Section 17 of the Act of October 15, 1914, providing that every
   restraining order shall define the injury and state why it is irrep-
   arable and why the order was granted without notice, and that
   no temporary injunction shall be granted without notice " unless it
   shall clearly appear from specific facts shown by affidavit or by the
   verified bill that immediate and irreparable injury, loss or damage
   will result to the applicant before notice can be served and a hear-
   ing had thereon," applies to suits brought under § 266 of the
   Judicial Code.   P. 595.

2. An order granting a temporary injunction without setting forth
   specific reasons for issuing it, is contrary to the Act of October 15,
   1914, c. 323, § 19, but not therefore void.   P. 591.

3. A decree of the District Court temporarily enjoining action of state
   officials for the enforcement of a state law, should be accompanied
   by an opinion setting forth fully the reasons.   P. 596.

4. Evidence of danger of irreparable injury is essential to justify issu-
   ance of a temporary injunction.   P. 592.

5. Where a railway company, after acquiescing for years in an order
   of a state commission enjoining removal of its shops and division
   point from one place to another pending determination by the
   commission of objections made by citizens of the place where they
   were located, indicated its purpose to make the change, and the
   matter was set for hearing by the commission, and the railway
   failed to show that an emergency required an immediate change or
   that delay in applying to a federal court would subject it to
   penalties under the state law, the case was not one of such threat-
   ened irreparable injury as to justify the federal court in issuing
   an interlocutory injunction against the commission's hearing the
   case, it being clear that the railway by participating in such hear-
   ing would not waive its right to contest in the federal court the
   constitutionality of the state law under which the commission was
   acting.   P. 592.

6. Whether the Oklahoma law forbidding railroads from removing shops and division points, in certain cases, without previously securing permission of the State Corporation Commission, is constitutional as applied to a railroad engaged in interstate as well as intrastate commerce, is not here determined; but to require such a regulating body to be advised of such changes is not such an obvious interference with interstate commerce that on application for a preliminary injunction the Act should lightly be assumed to be beyond the power of the State.  P. 594.

Reversed.

APPEAL from an interlocutory decree of the District Court which enjoined the Corporation Commission of Oklahoma from enforcing an order by which the Railway was required not to remove its shops and division point from the City of Sapulpa, and from preventing it from putting into effect a contemplated passenger train schedule, and which enjoined the other defendants—the Attorney General of the State and citizens of Sapulpa—from participation in proceedings before the Commission.

Mr. C. B. Ames, with whom Messrs. Edwin Dabney, Attorney General of Oklahoma, Houston B. Teehee, Assistant Attorney General, and T. L. Blakemore were on the brief, for appellants.

Mr. C. B. Stuart, with whom Messrs. E. T. Miller, M. K. Cruce, and Ben Franklin were on the brief, for appellee.

MR. JUSTICE BRANDEIS delivered the opinion of the Court.

This is a direct appeal from a decree for an interlocutory injunction entered by the federal court for northern Oklahoma. The plaintiff below was the St. Louis-San Francisco Railway Company; the defendants the Corporation Commission of that State, its Attorney General and some citizens of Sapulpa. The bill was filed on Jan-

uary 11, 1927. The case was heard on January 19, by three judges under § 266 of the Judicial Code, as amended, and was decided on the same day. No opinion was delivered.

The Act of February 5, 1917, Compiled Oklahoma Laws 1921, §§ 3482–3485, § 5548, prohibits a railroad from removing its " shops or division points which have been located at any place in this State for a period of not less than five years without previously securing the permission of the Corporation Commission to make such removal." Railroad shops and a division point of the St. Louis-San Francisco system have been located in Sapulpa, Oklahoma, since 1890. The Railway indicated a purpose to remove these shops and the division point to Tulsa. On February 19, 1917, the Corporation Commission issued, upon complaint of citizens of Sapulpa and upon notice to and hearing of the Railway, a temporary restraining order enjoining the removal. The Railway acquiesced in this order; the Commission retained jurisdiction of the cause; and neither party took any action therein for nearly ten years. In December, 1926, while the restraining order issued in 1917 was in force, the Railway, without leave of the Commission and without making any application in the cause, directed that the division point for passenger trains be changed in January, 1927, to Tulsa; and it indicated a purpose to remove its shops to West Tulsa. Thereupon, the complaining citizens of Sapulpa filed in the cause a motion, which, reciting these facts, prayed that the cause be set for hearing and that meanwhile the Commission prohibit the Railway from making any change. The Commission set the hearing for January 17, 1927, and renewed the temporary restraining order.

The Railway brought this suit shortly before the day set for the hearing by the Commission. The bill charges that the Oklahoma Act violates the commerce clause, the

due process clause and the equal protection clause; and that, hence, the Commission is without jurisdiction in the premises. The sole prayer is that the defendants be enjoined " from compelling plaintiff to submit to the jurisdiction of the Corporation Commission in the several matters aforesaid," that is, the proposed removal from Sapulpa. The decree is broader than the prayer. It enjoins the Commission from hearing the cause pending before it; from taking any other action therein; from making or enforcing any order restraining the Railway from removing its shops or division point from Sapulpa, and specifically from putting into effect a contemplated passenger train schedule on January 23, 1927, the schedule being intended to facilitate the change of the division point. It enjoins the other defendants from participation in any way in the proceedings before the Commission.

. The decree disregards the requirement of § 19 of the Act of October 15, 1914, c. 323, 38 Stat. 730; 738; United States Code of Laws, Title 28, § 383, p. 909, " That every order of injunction . . . shall set forth the reasons for the issuance of the same, shall be specific in terms, . . ." It does not declare that the Oklahoma statute is unconstitutional; nor does it state any other reason why the action enjoined is a violation of plaintiff's rights. It does not recite, even in general terms, that there is danger of irreparable loss. It sets forth no fact from which such danger can be inferred. It recites merely that the case was submitted on affidavits and that " the court having considered said affidavits and having heard argument of counsel both for plaintiff and defendants, is of the opinion that the temporary injunction prayed for by plaintiff herein should be in all things granted."

Although proper practice demands that the provision thus prescribed by Congress be scrupulously observed, disregard of the statutory requirement concerning the

form of the order did not render the interlocutory decree void. *Druggan* v. *Anderson*, 269 U. S. 36, 40. It must, however, be reversed, because the verified bill and the affidavits fail to supply that evidence of danger of irreparable injury to plaintiff which is essential to justify issuance of a temporary injunction. Indeed, it appears affirmatively from the allegations of the bill and the facts testified to in the affidavits that irreparable injury would not have resulted from the failure to issue a restraining order before serving notice on the defendants; that the interlocutory injunction should have been denied, except possibly as to the adoption of the new passenger train schedule on January 23, 1927; and that otherwise action by the court should have awaited the final hearing.

The only relief prayed for in the bill is that the defendants be enjoined " from compelling plaintiffs to submit to the jurisdiction of the Corporation Commission in the several matters aforesaid." There is no prayer for general relief. No right or interest of the Railway would have been prejudiced by participating in the hearing before the Commission and awaiting the result thereof. The Railway would not thereby have waived its right to contest in the federal court the validity of the Oklahoma law. Nor would delay in making application to the federal court have subjected it to penalties under the Oklahoma law. The earliest date on which the Railway is definitely shown to have proposed to take any action falling within the prohibition of the Commission's order was January 23, 1927, when the Railway proposed to put into effect the new schedule involving change of the division point for passenger trains from Sapulpa to Tulsa. The hearing before the Commission had been set for January 17, 1927. It was clearly possible, and was perhaps probable, that the Commission would, after hearing argument on that day, have modified its order so as to permit the passenger schedule to go into effect. For

the matter of serious concern to Sapulpa was the threatened removal of the shops and the freight terminals; not the proposed new schedule for passenger trains. Moreover, if the Commission had refused to permit the passenger schedule to go into effect, the Railway would still have had ample opportunity before January 23 to secure from the federal court relief in that respect.

The broader permission to remove both the shops and the division point might also have been granted by the Commission if it had been permitted to proceed with the hearings set for January 17. The Railway asserts that the removal would result in an improved service and in economy in operation. If this appeared to be true, it was the duty of the Commission, under the Oklahoma law, to authorize the removal, unless thereby the health of the employees of the Railway or of their families was imperiled. It is not to be assumed that the Railway proposed to remove the shops to an unhealthy location. And it may not be assumed that the Commission would have disregarded its duty. *Grand Trunk Ry. Co.* v. *Michigan Railroad Commission,* 231 U. S. 457, 464–466; *Western & Atlantic R. R.* v. *Georgia Public Service Commission,* 267 U. S. 493, 496.

The facts alleged in the bill and testified to in the affidavits, show also otherwise that there was not danger of irreparable loss to plaintiff within established rules of equity practice. The Railway had for ten years acquiesced in the Commission's order prohibiting removal. There had not been, so far as appears, even a suggestion to the Commission that the Act under which the order issued was invalid or that the order was otherwise objectionable to the Railway. The advisability of the removal of the shops was a matter as to which the Railway officials had differed in judgment. The vice-president in charge of operation testified: "We should have changed many years ago." The president assured a committee representing Sapulpa in December, 1925, that the city

was the logical place for the terminal now located there, . . . that his company was considering the enlargement of the terminals . . . and that there was not reason for any anxiety on the part of the citizens of Sapulpa as to the removal of the terminals." In December, 1926, apparently, the Railway's officials concluded that, in view of the changed traffic and operating conditions, the time had come when the removal of the shops and division point from Sapulpa to Tulsa should be undertaken; and that, with a relatively small capital outlay at Tulsa, the removal would result not only in improved service, but also in an important saving in operating expenses. But there was no emergency requiring the issue of an interlocutory injunction. To the Railway the matter was not one of vital concern. For it, time was not of the essence. The effect of the Commission's restraining order was merely to keep things in *statu quo* until the final hearing in the federal court. The interlocutory decree set the Railway free to remove the shops before the case could be heard on final hearing. By ending the *status quo* which had existed for ten years, it exposed the city and its citizens to danger of irreparable loss. The change subjected Sapulpa to grave and immediate peril. Removal of the shops which had been located in Sapulpa for a generation would probably affect property values seriously and might bring disaster in its train. It might ruin businesses. It might result in unemployment. It might compel many of Sapulpa's citizens to seek homes elsewhere. On application for an interlocutory injunction such considerations are of weight.

We have no occasion to determine whether the Oklahoma Act is obnoxious to the Federal Constitution. But as bearing upon the propriety of issuing the temporary injunction, the fact is important that the controversy concerns the respective powers of the Nation and of the States over railroads engaged in interstate commerce.

Such railroads are subject to regulation by both the State and the United States. The delimitation of the respective powers of the two governments requires often nice adjustments. The federal power is paramount. But public interest demands that, whenever possible, conflict between the two authorities and irritation be avoided. To this end it is important that the federal power be not exerted unnecessarily, hastily, or harshly. · It is important also that the demands of comity and courtesy, as well as of the law, be deferred to. It was said in *Western & Atlantic R. R.* v. *Georgia Public Service Commission,* 267 U. S. 493, 496, that a law of a State may be valid which prohibits an important change in local transportation conditions without application to the state commission, although the ultimate authority to determine whether the change could or should be made may rest with the federal commission. And it was there said that the " action of the Company in discontinuing the service without a petition " to the state body was " arbitrary and defiant." Compare *Henderson Water Co.* v. *Corporation Commission,* 269 U. S. 278. To require that the regulating body of the State be advised of a proposed change seriously affecting transportation conditions is not such an obvious interference with interstate commerce that on application for a preliminary injunction the Act should lightly be assumed to be beyond the power of the State.

The decree recites that a restraining order was issued on the filing of the bill. So far as appears, the court also disregarded in issuing it the requirement of § 17 of the Act of October 15, 1914, Code, Title 28, § 381, p. 909. We think that § 17 applies to suits brought under § 266 of the Judicial Code.[1] Section 17 provides: " Every such

---

[1] Section 17 took the place of § 263 of the Judicial Code, which was of general application. The last sentence of § 17 (omitted from § 381 of Title 28 of the Code) reads: ".Nothing in this section

temporary restraining order . . . shall define the injury and state why it is irreparable and why the order was granted without notice . . ." It provides also: "No temporary restraining order shall be granted without notice to the opposite party unless it shall clearly appear from specific facts shown by affidavit or by the verified bill that immediate and irreparable injury, loss, or damage will result to the applicant before notice can be served and a hearing had thereon." Such facts do not appear to have been shown. They are not alleged in the verified bill; and the affidavits in support were not filed until the hearing on the interlocutory injunction.

The purpose of Congress in requiring that "every order for an injunction shall set forth the reasons for the issuance of the same," was in part to ensure deliberation, and thus minimize the chances of error. It was in part to prevent or allay the irritation naturally incident to interference by injunction with the action of the state government. Congress did not require the court to supplement the recitals in the decree by a fuller statement in an opinion. The importance of an opinion to litigants and to this Court in cases of this character was pointed out in *Virginian Ry. Co.* v. *United States,* 272 U. S. 658, 675. The importance is even greater where the decree enjoins the enforcement of a state law or the action of state officials thereunder. For then, the respect due to the State demands that the need for nullifying the action of its legislature or of its executive officials be persuasively shown.

*Reversed.*

contained shall be deemed to alter, repeal or amend section two hundred and sixty-six" of the Judicial Code. In requiring specific findings of irreparable damage in the issuance of restraining orders, no alteration, repeal or amendment of § 266 was made.