**SPARKS, U. S. Atty., v. HART COAL CORPORATION et al.**
**No. 6820.**

Circuit Court of Appeals, Sixth Circuit.

Dec. 14, 1934.

Dwight L. Savage, of Washington, D. C. (Thomas J. Sparks, of Louisville, Ky., and Harold M. Stephens, A. H. Feller, Sp. Asst. Atty. Gen., and Carl McFarland, all of Washington, D. C., on the brief), for appellant.

J. Van Norman, of Louisville, Ky. (A. C. Van Winkle, Van Winkle & Skaggs, and Norman, Quirk & Graham, all of Louisville, Ky., on the brief), for appellees.

Before HICKS, SIMONS, and ALLEN, Circuit Judges.

SIMONS, Circuit Judge.

The Hart Coal Corporation, engaged in the mining of coal in the state of Kentucky, filed its bill in equity on behalf of itself and of numerous other corporations in the same industry joined as plaintiffs, to restrain the United States attorney for the Western district of Kentucky, and J. R. Layman, state compliance director under the National Industrial Recovery Act, from initiating or prosecuting suits in equity or criminal proceedings against the plaintiffs for violations of certain orders of the National Recovery Administrator, made in pursuance of the Code of Fair Competition for the Bituminous Coal Industry. The action was dismissed as to the defendant Layman because it affirmatively appeared that he had no authority to direct, institute, or control proceedings against violators of the code, but a temporary restraining order was granted in accordance with the prayer of the bill against the defendant Sparks. Upon hearing on a motion for a preliminary injunction, an interlocutory order granting it was entered, and this appeal followed.

The bill complains of the order of the National Recovery Administrator of March 31, 1934, as supplemented by an order of April 22, 1934, setting up a scale of minimum wages and maximum hours of labor in the bituminous coal industry of Western Kentucky. It alleges that the business of mining and producing coal for market is not interstate commerce, and denies the power of Congress to regulate it; that the Western Kentucky field is a sharply defined subdivision of the coal industry, having peculiar and exceptional problems not existing in competitive areas; that, notwithstanding the code submitted by this field gave recognition to adverse conditions therein in the wage scale which it proposed, this code was rejected and a national code for the industry formulated by the Administrator and approved by the President. It further alleges that the plaintiffs yielded obedience to and proceeded to operate under the national code, relying upon certain clauses therein providing for a readjustment of wages and hours after investigation, but that, notwithstanding an investigation conducted by the code authorities disclosed that for the month of November, 1933, the Western Kentucky coal field had sustained a loss of 6.95 cents per ton, while competitors in the Southern Illinois field had made a profit of 10.52 cents per ton, and those in the Indiana field a profit of 7.76 cents per ton, and a request was made for readjustment of the wage scale in Western Kentucky, no action was taken by the Administrator until March 31, 1934, when, without notice or hearing, he arbitrarily issued the order of that date, by which the minimum wage scale for the Western Kentucky field was greatly increased and the hours of service reduced from eight to seven per day, with no corresponding increases in the Illinois and Indiana fields except such as resulted from a reduction of hours in those fields; that plaintiffs, knowing they could not operate under the increased wage scale except at a heavy loss, reduced the operations of their mines to the minimum necessary to fill existing contracts, and appeared at a hearing on the order held April 9, 1934; that at such hearing they offered figures and findings made by the National Recovery Administration itself in support of their claim that they could not exist under the wages prescribed, but that, notwithstanding the absence of contrary evidence, the Administrator not only declined to reduce the wage scale fixed in the order of March 31, 1934, but materially reduced the wage scale for the competing Alabama field; that this reduction operated to close to the plaintiffs its Southern markets, and that the combined effect of the two orders was to exclude the plaintiffs from all

competitive markets and to destroy their business.

The orders are attacked as an unconstitutional attempt on the part of the national government to regulate matters exclusively reserved to the states and to the people under the Tenth Amendment to the Federal Constitution, as violative of the Fifth Amendment in that they deprive the plaintiffs of property without due process of law, as arbitrary and capricious, and as in disregard of the provisions of the code for the industry. The National Recovery Act is also attacked as unconstitutional because it is an unlawful delegation of legislative power.

The answer of the defendant denies all of the material allegations of the bill, portrays coal mining as a great national industry vital to basic industries located in states other than those in which coal is produced, and to railroads as instrumentalities of interstate commerce, asserts the power of Congress to regulate it as one affecting such commerce, and denies any actual threat of enforcement of the code or its penalties as against the plaintiffs.

The bill is supported by the affidavit of K. U. Meguire, who deposes that substantially all of the coal mined in the Western Kentucky coal fields and at the mines of the plaintiffs is in pursuance of a long-continued practice sold f. o. b. at the mines, and that substantially no coal is shipped by the plaintiffs in interstate commerce. This is met by an affidavit of Wayne P. Ellis, deputy administrator under the National Recovery Administration, to the effect that the price of coal at the mines merely reflects the delivered price in the common interstate consuming markets after deducting transportation costs; that it has long been customary in every mine producing section for operators to include in their contracts clauses providing for increase or decrease in prices occasioned by fluctuation of wage costs at the mines; and that no evidence had been submitted by the plaintiffs at any of the hearings to show the absence of such clauses in their contracts.

A further affidavit of Wayne P. Ellis contains an exhaustive review of the coal industry, its size and importance, its relation to other industries, its condition prior to the adoption of the code, an exposition of the industry's interstate character, of the failure of state and the necessity for federal regulation, together with a statement of the purpose of the National Recovery Administration to stabilize the industry, to fix wages therein, and co-ordinate them with its whole economy, including a purpose to stabilize prices at levels which would permit a proper competitive equilibrium, an objective impossible of achievement without first stabilizing the most important item of cost—labor.

The District Judge announced a studied and elaborate opinion dealing with the constitutional questions involved, in which he concluded there was no power in the Congress, either under the commerce or other clauses of the Constitution, to justify the National Recovery Administration in its attempted regulation of the plaintiffs' activities, and that, even conceding such power, the act was an unconstitutional delegation of it to the President, since it set up no standards to guide him in carrying out the legislative will and policy therein expressed. The District Judge, however, made no findings upon any of the determinative issues of fact raised by the pleadings and proofs, nor can any such findings be safely arrived at by us in the present state of the record.

It has long been settled that courts have no power per se to review and annul acts of Congress on the ground that they are unconstitutional. That question may be considered only when the justification for some direct injury suffered or threatened, presenting a justiciable issue, is made to rest upon such act. The circumstances which alone bring the validity of a state or federal statute within the reach of the judicial power were recently considered by us in City of Allegan v. Consumers' Power Co., 71 F.(2d) 477, 481, certiorari denied 55 S. Ct. 100, 79 L. Ed. ——, and the authoritative precedents are there sufficiently cited.

It is also an essential to the exercise of equitable jurisdiction in the granting of an injunction to restrain the enforcement of a statute on the ground of invalidity that there be a precedent determination of necessity therefor in order to effectually protect property rights and the rights of persons against injuries otherwise irremediable. Champlin Refining Co. v. Corporation Commission of Oklahoma, 286 U. S. 210, 52 S. Ct. 559, 76 L. Ed. 1062, 86 A. L. R. 403; Sparks, U. S. Attorney, v. Mellwood Dairy (C. C. A.) 74 F.(2d) 695, this day announced. The bill here considered states grounds for injunctive relief in its allegations of irreparable injury to the business of the plaintiffs if they comply with the challenged orders, and in the heavy penalties they will incur if they do not. But these allegations are denied by

the answer and supporting affidavits, and the fact of injury, either suffered or imminent, is neither found by the District Judge nor sufficiently obvious on the present record to warrant us in such finding, especially in view of the contention that the wage and hour scale is but a part of a stabilizing program which includes also the stabilization of prices of the plaintiffs' product. In such situation an appellate court should be adequately advised of the factual basis of the decision below, as well as of its legal basis. Public Service Commission of Wisconsin v. Wisconsin Telephone Co., 289 U. S. 67, 53 S. Ct. 514, 77 L. Ed. 1036; Virginian Railway Co. v. United States, 272 U. S. 658, 47 S. Ct. 222, 71 L. Ed. 463; Lawrence v. St. Louis-San Francisco R. Co., 274 U. S. 588, 47 S. Ct. 720, 71 L. Ed. 1219; Hammond v. Schappi Bus Line, 275 U. S. 164, 48 S. Ct. 66, 69, 72 L. Ed. 218; Railroad Commission v. Maxcy, 281 U. S. 82, 50 S. Ct. 228, 74 L. Ed. 717. In the Schappi Case, supra, the court, at p. 171, after indicating the issues involved, said: "These questions have not, so far as appears, been considered by either of the lower courts. The facts essential to their determination have not been found by either court. And the evidence in the record is not of such a character that findings could now be made with confidence. The answer denied many of the material allegations of the bill."

While delay in arriving at decision of important questions is always to be regretted, yet, conceiving as we do that the Supreme Court will adhere to the rule invoked in the cases cited, we may the more effectively speed the settlement of the controversy by remanding the case to the District Court for completion of the record in conformity herewith. It being necessary to set aside the interlocutory decree, as improvidently issued, we do it without prejudice to the right of the plaintiffs to resubmit their petition for temporary restraining order to the discretion of the District Judge pending further proceedings, or to the rights of the litigants to amend pleadings or amplify proofs. If such restraining order is granted, it may be assumed that a rehearing on the petition for interlocutory injunction will be speedily granted, and, in the event of a second appeal, a motion to advance the hearing here may be presented to this court. Nothing said herein is to be taken as an indication of the view of this court upon the meritorious legal questions involved.

Decree vacated, and cause remanded for further proceedings in conformity herewith.