**TIMMER v. TALBOT et al.**

No. 3703.

District Court, W. D. Michigan, S. D.

Dec. 16, 1935.

Knappen, Uhl, Bryant & Snow, of Grand Rapids, Mich., for plaintiff.

Dunham & Sherk, of Grand Rapids, Mich., for defendant.

RAYMOND, District Judge.

The parties have submitted to the court the question of the constitutionality of Act No. 18 of the Extra Session of the Michigan Legislature held in 1934. They concede that the right of the trustee to recover is largely dependent upon alleged invalidity of the chattel mortgage sale under which defendant Lemmen claims title to the property in dispute. Process was not served on defendant Talbot, and the case as to him has been dismissed. Plaintiff asserts that the mortgage was void as against creditors because of noncompliance with the provisions of Act No. 18.

The portion of the statute here involved reads: "Every mortgage or conveyance intended to operate as a mortgage of goods and chattels which shall hereafter be made covering future advances shall be absolutely void as against the creditors of the mortgagor, and as against subsequent purchasers or mortgagees in good faith, beyond the sum stated therein and unless the same, or a true copy thereof, shall be filed as above provided and when so filed said mortgage shall constitute a first lien for the sum therein stated without creating any obligation on the part of the mortgagee, or his assigns, to make such advances."

Defendant contends that the act is unconstitutional because it does not deal with any subject expressly stated in any message of the Governor to the special session of the Legislature. Defendant also asserts that, contrary to constitutional prohibition, the act is broader than its title and that it embraces more than one subject, and, further, that in its enactment the provision of the State Constitution which prohibits amendment or alteration of an act during its passage through either house so as to change its original purpose, meaning, or intent, was violated. Defendant also contends that the act has no application to the chattel mortgage involved in this suit because the words "future advances," used in the statute, refer only to cash advances; it being conceded here that the future advances secured by the chattel mortgage were not of cash but were credits for merchandise sold.

Section 22 of article 5 of the State Constitution provides: "No bill shall be passed at a special session of the legislature on any other subjects than those expressly stated in the governor's proclamation or submitted by special message." The Governor's message to the Legislature, so far as it related to the matter here under consideration, was as follows: "In its activity in financing and refinancing installment mortgages on live stock and farm produce, the Federal loan agencies engaged in that field have experienced some difficulty; and considerable delay has resulted from the fact that the law requires such mortgages to be filed with the township clerks. This presents difficulty in determining the amount of such liens as may be outstanding against the chattels submitted for loans, and it has been suggested that it would be better to have such chattel mortgages filed with the county register of deeds. The matter is submitted to you for your consideration and action." Defendant contends that if the Legislature went further, by intent or inadvertence, than to deal with in-

stallment mortgages on livestock and farm produce, the act is unconstitutional.

Counsel cite many authorities illustrative of their contentions. However, the Supreme Court of Michigan recently has stated the principles applicable to this class of cases and analysis of those cited by counsel is thereby rendered unnecessary. In the case of Smith v. Curran, 268 Mich. 366, 371, 372, 256 N.W. 453, 454, that court quoted the following with approval: " 'The guiding principle in sustaining legislation of a special session is that it be germane to, or within, the apparent scope of the subjects which have been designated as proper fields for legislation. In construing a call, the words of any portion thereof must be interpreted, not only as commonly and universally understood, but also as applicable to the subject intended to be affected by legislation. While the Legislature must confine itself to the matters submitted, it need not follow the views of the Governor or legislate in any particular way. Within the special business or designated subjects submitted, the Legislature cannot be restricted or dictated to by the Governor. It is a free agent, and the Governor, under the guise of definition, cannot direct or control its action. Nor is it confined to any one subject, but may chose (choose) from parts of different subjects, provided a new subject, unrelated to those stated, is not acted upon.' " And commented that: "We may disregard the reference in the Governor's message to the bill prepared by the legislative council because the Governor cannot restrict the Legislature to consideration of a particular bill. Within the subject submitted, the Legislature has freedom of action."

Hence the primary consideration is: What was the subject submitted in the Governor's message? A narrow view would be that the only subject so submitted was that of installment mortgages on livestock and farm produce, that the problem to be solved was that of federal loan agencies in their determination of the amount of liens, and that the only permissible solution was to provide for the filing of chattel mortgages with the register of deeds instead of with township clerks.

■ The reasonable deduction from the authorities, however, is that while the Governor may control the subject-matter of legislation to be enacted at a special session, he may not restrict boundaries within the natural range of that subject or dictate methods of dealing with it, or limit the class of those to be benefited.

■ The attention of the Legislature having been called by the Governor to difficulties and delays experienced by federal loan agencies in determining the amounts due upon installment chattel mortgages on livestock and farm produce, it would be well within the province of the Legislature to solve the problem not only for federal loan agencies but for all who have occasion to extend credit upon chattel mortgage security, whether payable in installments or otherwise. The Legislature might likewise reasonably determine that adequate solution of the problem required application of the amended statute to all chattels, and not solely to the class mentioned in the special message. Obviously, one method of solving the difficulty in ascertaining the amount due on such securities would be the requirement that they be filed in the register of deeds' office at the county seat where regular business hours prevail and systematic methods of filing are observed, in preference to the filing in a number of widely separated places where township clerks may reside, with the incident disadvantage of frequent changes of those officials. Moreover, it seems clear that without departing from the general subject-matter, the Legislature might find it necessary, in perfecting an adequate solution, to include a provision that chattel mortgages shall clearly state the sum secured thereby. To solve the problem presented by the message with such reasonable completeness seems to the court not to offend the constitutional prohibition. No injustice is apparent in the requirement that mortgages for future advances shall clearly state the amount secured. The uncertainty, inconvenience, and expense, and the opportunities for fraud and mistake incident to the alternative necessity that the amount secured by such mortgages be ascertained from the records of either the mortgagor or the mortgagee or both, are apparent. The aid to business transactions by having the amount definitely ascertainable from a public record in a convenient place is substantial. It also eliminates difficulties and delays in determining the amount of outstanding liens on property subject to chattel mortgages. This appears to the court to be the essence of the problem intended by the Governor to be submitted to the special session of the Legislature in 1934.

Equally as clear as the holding of the court that the law as enacted was within the subject-matter of the Governor's message is the conclusion that there was no change in the original purpose of the act during its passage through the Legislature and that therefore there was no amendment changing its essential purpose.

However, even were the constitutionality of the act to be considered a doubtful one and not as clear as it now appears, the result would be the same. Both the Supreme Court of the United States and the Circuit Court of Appeals of this Circuit have indicated limitations upon the jurisdiction of District Courts to declare acts of the state Legislature unconstitutional. In the case of Kentucky-Tennessee Light & Power Co. v. City of Paris, Tenn. (C.C. A.) 48 F.(2d) 795, 799, Judge Denison said: "The federal courts, lacking a controlling decision by the state court, do not, except in the clearest cases, hold that the state Legislature has violated the state Constitution; and the violation, in the present case is, to say the least, not clear." And in the case of Michigan Central Railroad Co. v. Powers, 201 U.S. 245, 291, 26 S.Ct. 459, 461, 50 L.Ed. 744, Justice Brewer said: "All objections to the validity of the act, whether springing out of the state or of the Federal Constitution, may be presented in a single suit, and call for consideration and determination. At the same time the Federal courts will be reluctant to adjudge a state statute to be in conflict with the state Constitution before that question has been considered by the state tribunals." See, also, Louisville & Nashville Railroad Co. v. Garrett, 231 U.S. 298, 34 S.Ct. 48, 58 L.Ed. 229.

Additional limitations upon the power of District Courts to hold acts of Congress or acts of the Legislature unconstitutional are expressed in the following cases: Mather v. MacLaughlin (D.C.) 57 F.(2d) 223; Link v. Receivers of Seaboard Air Line Railway Co. (C.C.A.) 73 F.(2d) 149; Sparks v. Hart Coal Corporation (C.C.A.) 74 F.(2d) 697; In re Moore (D.C.) 8 F. Supp. 393, and In re Coller (D.C.) 8 F. Supp. 447.

No authority is cited and no good reason occurs to the court for holding that the words "future advances" as used in the statute refer to cash and not to extensions of credit for sales of merchandise or for other things of value. The essential purpose of the provision is to protect creditors of the mortgagor. To limit the protection of the statute to loans of cash would be an obviously incomplete solution. The consideration for the extension of credit secured by a mortgage is not a matter of importance to those sought to be protected by the provisions of the statute.

The finding of the court is that the objections made to the statute cannot be sustained.