**MISSOURI PAC. R. CO. et al. v. UNITED STATES et al.**

**No. 11797.**

District Court, E. D. Missouri, E D

Oct. 19, 1936

H. H. Larimore, of St. Louis, Mo. (H. C. Barron and A. B. Enoch, both of Chicago, Ill., Robert W. Thompson, of Dallas, Tex., Baker, Botts, Andrews & Wharton, of Kansas City, Mo., and R. S. Outlaw, of Chicago, Ill., on the brief), for plaintiffs.

Elmer B. Collins, of Washington, D. C., for the United States.

Daniel W. Knowlton and E. M. Reidy, both of Washington, D. C., for Interstate Commerce Commission.

Robert E. Quirk, of Washington, D. C., for intervening defendant.

Before VAN VALKENBURGH, Circuit Judge, and DAVIS and MOORE, District Judges.

### Findings of Fact.

1. Plaintiffs herein are common carriers by railroad subject to the Interstate Commerce Act (49 U.S.C.A. § 1 et seq.), engaged in the transportation of freight and passengers generally between points in the Southwest and between points on their lines and points on the lines of other com-

mon carriers by railroad throughout the continental United States.

2. The Quanah, Acme & Pacific Railway Company, hereinafter called the Quanah, operates 127.73 miles of track, the main line of which extends in a general westerly direction from Quanah, Tex., to Floydada, Tex., in the Texas Panhandle, 110.9 miles. Since 1914 the Quanah has leased and operated the line of the St. Louis-San Francisco & Texas Railway Company which extends from Quanah north to the Red river, 8.1 miles.

3. The Interstate Commerce Commission, hereinafter called the Commission, in proceedings before it known as Cottonseed, Its Products, and Related Articles, Rate Structure Investigation, No. 17,000, Part 8, 188 I.C.C. 605, and Id., 203 I.C.C. 177, prescribed rates to be applied by the rail carriers, including these plaintiffs, to the transportation of such commodities, in carloads, based on varying percentages of first-class rates, such rates to become effective on or before October 3, 1934.

4. In making effective the rates prescribed in the aforesaid proceedings the carriers were not required to publish specific routings, except as they participated in the transportation of such commodities. As class rates applied only over certain routes, and since the rates required to be made effective were rates based on varying percentages of first-class rates, such rates were published to apply over the routes via which the class rates applied. As a result, many routes in connection with the Quanah were eliminated.

5. The commission in a supplemental report on further consideration, 205 I.C.C. 15, decided November 7, 1934, found that the Quanah was entitled to all of the routes which were in operation prior to October 3, 1934, and that the rates prescribed in the prior reports should be made effective over such routes irrespective of whether or not there were first-class rates in effect. By order dated December 8, 1934, the Commission reopened the proceeding for further hearing to determine what routes in connection with the Quanah the rates prescribed should apply.

6. The routings established by the carriers when, as stated in paragraph 4 hereof, they published the prescribed rates were suspended by the Commission and became the subject of an I. & S. proceeding, No. 4069, Routing via Quanah; A. & P. Ry. Co., 211 I.C.C. 443. This I. & S. Docket was consolidated with Docket No. 17,000, Part 8, which had been reopened, both cases were heard upon a common record and became the subject of one report, dated November 14, 1935.

The orders here sought to be annulled and set aside were those entered by the Commission following its hearing of what is called the Consolidated Case and reported at 211 I.C.C. 443.

7. The Commission, as a result of its findings in such Consolidated Case, entered an order in Docket No. 17,000, Part 8, requiring the carriers, including these plaintiffs, to publish joint through interstate rates on cottonseed and its products for application via routes that would include the line or parts of the line of the Quanah in accordance with a circuity formula set out by the Commission in its report in such case.

Such joint through interstate rates on the commodities involved under such formula would apply via the Quanah under the following circumstances:

(a) Where the distance over the short line or route was 500 miles or less and the longer route via the Quanah was not more than 50 per cent. circuitous.

(b) Where the distance over the short line or route was over 500 miles, but did not exceed 1,000 miles, and the longer route via the Quanah was not more than 37.5 per cent. circuitous, except that in instances where the short line or route exceeded 500 miles and the longer line or route did not exceed 750 miles, Fourth Section relief would apply to such longer line or route even though the said longer line or route was more than 37.5 per cent. circuitous.

(c) Where the distance over the short line or route exceeded 1,000 miles and the longer route via the Quanah was not over 25 per cent. circuitous, except that in instances where the short line or route exceeded 1,000 miles and the longer line or route did not exceed 1,375 miles, relief would apply to such longer line or route even though the said longer line or route was more than 25 per cent. circuitous.

8. In applying such formula the short line route was required to be ascertained by computing the shortest distance over which the traffic could move via existing connections for the interchange of carload traffic and without any limitation as to the number of carriers involved.

9. The rates prescribed in Rate Structure Investigation, Docket No. 17,000, Part

8, 188 I.C.C. 605, were a mileage scale of rates based on distance, and the distances the carriers were required to use in establishing the rates prescribed in that case were those via the shortest route over which the traffic could move without transfer of lading, except that where on account of the difference in rate levels as between different regions, rates based upon longer distances over longer routes would be lower than those based upon the short line distance such lower rates would apply.

10. The carriers in publishing the rates prescribed in Docket No. 17,000, Part 8, were required to determine the distance between two points in the manner as set forth in paragraph 9 hereof, and having determined such distance, were then required to publish the rate prescribed by the Commission as reasonable for such distance.

11. The rates prescribed in Docket No. 17,000, Part 8, were for application to interstate traffic in the states of Texas, Louisiana, Arkansas, Oklahoma, Kansas, Illinois, Kentucky, Tennessee, Mississippi, Iowa, Missouri, and in other states.

12. As result of the hearing in the Consolidated Case aforesaid, the Commission entered an order requiring the carriers, including these plaintiffs, to cancel the schedules involved in I. & S. 4069, without prejudice to the filing of new schedules containing routings in conformity with the provisions of the formula hereinbefore described.

13. The plaintiffs allege that under the provisions of section 15 (4) of the Interstate Commerce Act (49 U.S.C.A. § 15 (4) . the Commission in establishing a through route is without jurisdiction, except as provided in section 3 (49 U.S.C.A. § 3) and except where one of the carriers is a water line, to require any carrier by railroad, without its consent to embrace in such route substantially less than the entire length of its railroad and of any intermediate railroad operated in conjunction and under a common management or control therewith, which lies between the termini of such proposed through route, unless such inclusion of lines would make the through route unreasonably long as compared with another practicable through route which could otherwise be established and that the orders of the Commission here sought to be enjoined violate the provisions of that section. The plaintiffs also allege that the Commission, by the orders here assailed,

requires the plaintiffs to engage in a transportation service at less than reasonable rates and at rates less than found reasonable for such service by the Commission, and that the Commission is without authority to require a carrier to apply less than reasonable rates to a transportation service, and that to require such carrier to apply to a transportation service a rate less than one found reasonable by the Commission for such service takes the property of such carrier without due process of law.

14. There is no finding by the Commission in its report which forms the basis for the orders sought to be enjoined that the routes published by the carriers and required to be canceled were unreasonably long as compared with other through routes that could otherwise be established.

15. There is no finding by the Commission that the carriers in publishing the routings contained in the schedules required to be canceled failed to afford all reasonable, proper and equal facilities for the interchange of traffic between their respective lines and for the receiving and forwarding and delivering of passengers or property to and from their several lines and those connecting therewith, or that such carriers by reason of such published routings discriminated in their rates, fares, and charges between such connecting lines or unduly prejudiced any such connecting line in the distribution of traffic not specifically routed by the shipper, or that if such schedules were permitted to become effective that the provisions of section 3 of the Interstate Commerce Act would be violated.

16. The schedules involved in I. & S. Docket No. 4069 were required to be canceled by the Commission upon the states ground that the carriers had failed to show the lawfulness of the combination rates which would result were the through rates over existing routes canceled.

17. In Docket No. 17,000, Part 8, the order assailed in terms requires the carriers, including these plaintiffs, to participate in routes that would include the line or parts of the line of the Quanah, which routes would in many instances deprive these plaintiffs of their long hauls between the termini of such through routes, and there is no finding by the Commission in its report that forms the basis for such order that routes that would give to these plaintiffs their long haul between such termini would be unreasonably long as com-

pared with the routes required to be constructed in accordance with such formula.

18. Each plaintiff is required to engage in transportation over circuitous routes and would sustain substantial losses in revenue, since the rates required to be applied to such transportation would be less than rates found to be reasonable by the Commission for such transportation service.

## Conclusions of Law.

1. The power of the Commission to require the establishment of through routes found in section 15 of the Interstate Commerce Act (U.S. Code, title 49, § 15, 49 U.S.C.A. § 15), is limited by paragraph 4 of said section 15. Said paragraph in terms, except as provided in section 3 and except where one of the carriers is a water line, provides that in establishing a through route the Commission shall not require any carrier by railroad, without its consent, to embrace in such through route substantially less than the entire length of its railroad and of any intermediate railroad operated in conjunction and under a common management or control therewith which lies between the termini of such proposed through route, unless such inclusion of line would make the through route unreasonably long as compared with another practicable through route which could otherwise be established.

2. The Commission is without power except where a water line is involved to require a carrier to cancel its participation in a through route that embraces substantially the entire length of the railroad of such carrier and of any intermediate railroad operated in conjunction and under a common management or control therewith, which lies between the termini of such route, unless it finds either that such route is unreasonably long because of the inclusion of such lines as compared with another practicable through route which could otherwise be established, or that the participation by such carrier in such through route violates some provision of section 3 of the act.

3. A carrier cannot be required to justify the lawfulness of combination rates as a through rate over a route that embraces substantially less than the entire length of the railroad of such carrier lying between the termini thereof as a condition precedent to participating in a through route that includes substantially the entire length of the railroad of such carrier which lies between the termini of such through route, unless it appears that such last-named through route would be unreasonably long as compared with another practicable through route that could otherwise be established or that the participation by such carrier in such last-named through route would violate some provision of section 3 of the act.

4. If there be no violation of any provision of section 3 of the act, and, absent a water line, the participation by a carrier in a joint rate via a through route that includes substantially the entire length of the railroad of such carrier which lies between the termini thereof, such through route not being unreasonably long as compared with another through practicable through route which could otherwise be established, does not result in unjust discrimination.

5. The Commission is without authority to require the establishment of a through route in the absence of a finding that such through route required to be established would be in the public interest.

6. The Commission is without power to compel a carrier by railroad to apply to a transportation service other than a just and reasonable rate, and to require a carrier to apply to a transportation service a rate less than a rate the Commission finds as reasonable for such service would be to take the property of such carrier without due process of law.

7. Since a carrier is not required to justify the lawfulness of the combination rates as a through rate that would result were the joint rates over existing routes canceled, as a condition precedent to participation in a joint rate via a through route that would give to such carrier its long haul, provided such last-named through route is not unreasonably long as compared with another practicable through route that could otherwise be established, and provided there is no violation of any provision of section 3 of the act, and, absent a water line, the report of the Commission contains no valid finding that the schedules forming the subject of I. & S. Docket No. 4069 violate any provision of the Interstate Commerce Act, and the order entered requiring such schedules to be canceled is invalid.

8. The order entered by the Commission in Docket No. 17,000, Part 8, is invalid since it requires each plaintiff to participate in numerous through routes, each of which includes substantially less than the

entire length of the railroad of such plaintiff which lies between the termini of such through routes, when there is no finding that to include in such routes substantially the entire length of the railroad of such plaintiff which lies between the termini thereof would make any of such routes unreasonably long as compared with a practicable through route which could otherwise be established.

9. The orders entered by the Commission are affirmative and final, and plaintiffs must comply with such orders by a certain date or incur the penalties provided by statute and are such orders as may be reviewed by the courts pursuant to section 41, par. 28, and sections 43, 44, 45, 46, and 47 of title 28, United States Code Annotated.

PER CURIAM.

In conformity with the direction of the Supreme Court in Virginian Railway Company v. United States, 272 U.S. 658, 675, 47 S.Ct. 222, 228, 71 L.Ed. 463, and Lawrence et al. v. St. Louis-San Francisco Ry. Co., 274 U.S. 588, 596, 47 S.Ct. 720, 723, 71 L. Ed. 1219, we supplement our findings of fact and conclusions of law with this memorandum opinion, setting forth more specifically the grounds of our decision.

This case was heard upon application for an interlocutory injunction pendente lite. At the close of that hearing a stipulation was filed submitting the case as upon final hearing.

It is the contention of the plaintiffs that, by the orders complained of, the Commission is requiring the carriers, without their consent, to establish through routes which embrace less than the length of their railroads, and of any intermediate railroads operated in conjunction and under a common management or control therewith, which lies between the termini of such proposed through routes—in other words, to "short haul" themselves, contrary to the provisions of paragraph (4) of section 15 of the Interstate Commerce Act (49 U.S. C.A. § 15 (4).

Respondents contend that "in ordering cancellation of the proposed tariff the Commission exercised only its function of determining the reasonableness of rates."

These contentions make it necessary to examine closely the orders complained of, together with the conditions which led to their issue. This suit was filed under the Urgent Deficiencies Act (38 Stat. 219, 220 [28 U.S.C.A. § 47]) to enjoin orders entered by the Commission November 14, 1935, in a proceeding instituted by that Commission known as Routing via Quanah, Acme & Pacific Railway Company, I. & S. Docket No. 4069 and Docket No. 17,000, Part 8, reported in 211 I.C.C. 443. The plaintiffs had filed with the Commission schedules which failed to provide for joint rates over certain through routes, formerly established, which included the line of the Quanah, but which joint rates complied with the rates prescribed by the Commission for interstate transportation of cotton seed and its products between the points of origin and destination named in its orders. This produced the following objection from the Quanah: " * * * The Quanah objects to this restriction in routing and insists that it be permitted to participate in all of the *routes* in effect prior to October 3, 1934. If through *routes* and joint rates over the Quanah are eliminated, higher combination rates will apply with the result that shippers will not *route* their traffic over that line when lower rates over other through *routes* are available. * * *"

Thereupon, as stated in respondents' brief, the Commission considered further the subject-matters contained in No. 17,000, Part 8, and "by order dated December 8, 1934, the Commission reopened the proceeding designated No. 17,000, Part 8, and assigned it for further hearing for the purpose of determining *the routes* in connection with the line of the Quanah over which the rates prescribed by the Commission should apply."

Thereafter, the Commission consolidated I. & S. No. 4069 with the reopened proceeding No. 17,000, Part 8; a hearing of the consolidated proceeding was held, and the Commission made, entered, and served the orders complained of.

In its report the Commission finds that "respondents [plaintiffs herein] have no desire to exclude the Quanah from participation in the traffic over *routes* which are reasonably direct, but they do insist on their right to determine with which line or lines they will join in the transportation. Some of the *routes* in connection with the Quanah involve as many as six car interchanges, which result in loss of time and greater expense to the carriers than if only one or two such interchanges were necessary."

It is stated further that the Quanah insists that it be permitted to participate in

all of the *routes* in effect prior to October 3, 1934, and that, if through *routes* and joint rates over the Quanah are eliminated, higher combination rates will apply with the result that shippers will not *route* their traffic over that line when lower rates over other *through routes* are available. The Commission finally finds that: "A variety of *routes* would be in the public interest and insure a free movement of the traffic, but, in the interest of economical transportation, there should be some limitation as to circuity of *routes*, and the following formula is prescribed."

Here follow the circuity limitations upon the application of joint through interstate rates on cotton seed and its products via the Quanah set forth in the findings of fact. The Commission then finds:

"As to I. and S. No. 4069, we find that the suspended schedules have not been justified. This finding is without prejudice to the filing of new schedules containing *routes* in connection with the Quanah conforming to the circuity limitations set forth above. An order will be entered requiring the cancellation of the suspended schedules and discontinuing this proceeding.

"As to No. 17000, Part 8, Cottonseed, Its Products, and Related Articles, we find upon further hearing that the rates prescribed in the prior reports in that proceeding should apply in connection with the Quanah over *routes* which conform to the above circuity limitations." (The italics above are ours.)

In conformity therewith the orders complained of were entered. In view of the foregoing, it cannot be maintained that the Commission did not by these proceedings in effect establish certain through routes upon which joint rates upon cotton seed and its products must apply, and that, by its orders in so doing, it required the carriers, without their consent, to embrace in such routes substantially less than the portion of their railroads lying between the termini of such proposed through routes. No question of a rate to be charged by the carriers was involved. Their tariffs were within the schedules fixed by the Commission. Their proposed through routes were not unreasonably long as compared with other practicable through routes. In fact the entire proceedings, upon reopening, were concerned not with the *rate* to be exacted, but with the *routes* to be established for the primary, if not the sole, purpose of including the Quanah in transportation not originating upon its line and not reasonably direct between prescribed termini.

■ The purpose and effect of the Commission's action cannot be justified by its undoubted right, conferred by the act, to establish reasonable rates. This was in effect the establishment of joint through routes, not leaving them as formerly existing, but as modified, and, in fact, newly established, by the circuity formula prescribed.

This had necessarily the effect of denying to plaintiffs the right to cancel routes which compelled them to short-haul themselves, and of prescribing new routes which equally deprived them of the benefits of the provisions of section 15, par. (4).

■ It is practically conceded that, in general, the Commission has no power to prevent the cancellation of joint through rates if it could not compel the establishment of such joint rates in the first instance. The Commission itself has more than once so held. Ogden Gateway Case, 35 I.C.C. 131; Port of New York Authority v. Atchison, T. & S. F. Ry. Co., 144 I. C.C. 514, 517, 518. Counsel for the Commission and government now rely largely upon paragraphs (1) and (3) of section 3 of the Interstate Commerce Act. 49 U.S. C.A. § 3, pars. 1, 3, pp. 158, 195. We do not perceive that plaintiffs, by the cancellation proposed, nor by the routes resulting therefrom, have made or given any undue or unreasonable preference or advantage to any particular person, company, firm, corporation, or locality, or any particular description of traffic, to any undue or unreasonable prejudice or disadvantage, as forbidden by the terms of paragraph (1), nor do they, by their proposed action, offend against the inhibitions of paragraph (3), which has to do with interchange of traffic between connecting lines. Therefore, as no water line is involved, no exception appears to the rights of plaintiffs under paragraph (4) of section 15 of the Interstate Commerce Act. We think this case is ruled by the decision of the Supreme Court in United States v. Missouri Pacific R. Co., 278 U.S. 269, 49 S.Ct. 133, 136, 73 L.Ed. 322. It there appeared that the Commission, on complaint of the Fort Smith, Subiaco & Rock Island Railroad Company, made an order establishing through routes for westbound freight traffic over the complainant. This order was assailed by the Missouri Pacific, and a three-judge court sustained its contention and enjoined the

enforcement of the order. 21 F.(2d) 351. The Supreme Court, in affirming this action of the District Court, among other things held that ultimately the Commission had found that the proposed route would be desirable in the public interest; that the Interstate Commerce Act "does not give the Commission authority to establish all the through routes it may deem necessary or desirable in the public interest"; that "the purpose [of paragraph (4)] is to protect the long haul routes of carriers"; that the language of the statute being plain, no difficulty attended its construction in that case, and the court is "not at liberty to conjure up conditions to raise doubts in order that resort may be had to construction." "Inconvenience or hardships, if any, that result from following the statute as written, must be relieved by legislation. It is for Congress to determine whether the Commission should have more authority in respect of the establishment of through routes. Construction may not be substituted for legislation. * * * Legislative history may not be used to support a construction that adds to or takes from the significance of the words employed." However, the court found that such legislative history, if examined, would support the view expressed.

It appeared from the record that the Subiaco, forty miles long, had not been able to earn dividends, and sought to increase earnings by having its line made a part of through routes for interstate traffic not beginning or ending thereon. In respect to this latter desire its action did not differ from that of the Quanah in the instant case, and the action of the Commission in the two cases was to the same effect.

Counsel for respondents urge that the decision of the same court in Atchison, T. & S. F. R. Co. v. United States, 279 U.S. 768, 49 S.Ct. 494, 496, 73 L.Ed. 947, so far modifies the ruling in the case just analyzed as to justify the action of the Commission in the present case. We do not so interpret that decision. Without entering into a detailed statement of the situation there presented, it is clear that only a rate, not a route, was involved, except, as there stated, as a mere incident. The claim of the Santa Fé that section 15(4) was involved was properly rejected. The proposed tariff involved an increase in the rate, and the burden of justifying the increase before the Commission was imposed· upon the carrier by paragraph 7 of section 15 of the Interstate Commerce Act (49 U.S.C.A. § 15(7).

The grounds of the decision in the Santa Fé Case are best stated in the language of Mr. Justice Brandeis:

"To make an additional charge for having brought merchandise into a city, if it should afterwards be shipped out, is on its face unreasonable. And it is discriminatory to make that additional charge only if the outbound shipment is over one of several possible railroads. * * *

"In ordering cancellation of the proposed tariff the Commission exercised only its function of determining the reasonableness of ratès. It made a rate order to which the matter of routing was merely an incident."

Section 15(4) was never properly in the case as urged by the Santa Fé Railway Company. The court cited its former unanimous decision in the Missouri Pacific Case, without suggestiori of modification or distinguishment.

██ It is urged by defendants, however, that the cancellation would leave rail rates over the Quanah made up of combinations higher than the proposed through rates, and that such combination rates must be shown by plaintiffs to be reasonable as a condition precedent to the right to cancel. We do not think so. In availing themselves of their right to establish routings which would preserve their long haul, the carriers are not in any sense establishing the route or routes left available after cancellation. In its report the Commission holds that it is of the utmost importance to mills and shippers to have all available routes open in order to meet the demand for cotton seed products, and that, if certain routes were eliminated, some mills would enjoy a through transit rate to certain destinations, and others would be required to pay combination rates to the same destinations. This, the Commission says, would result in unjust discrimination. It is not such under section 3 (49 U.S.C.A. § 3) nor under any other section of the act to which our attention has been directed. Absent the exceptions specified in paragraph (4) of section 15, plaintiffs are entitled to the benefit of the provisions of that paragraph. As said by the Supreme Court, "inconvenience or hardships, if any, that result from following the statute as written, must be relieved by legislation." The rule that "it is for Congress to determine whether the Commission should have more authority in respect of the establishment of through routes," and that "construction

760

may not be substituted for legislation" applies in the case at bar as fully as in the Missouri Pacific Case, 278 U.S. 269, 49 S. Ct. 133, 136, 73 L.Ed. 322.

 One defense of this action is that section 4 of title 1 of the Emergency Railroad Transportation Act of 1933 (49 U.S.C.A. § 254) operates as a statutory inhibition against the elimination of any route or routes which were in effect at the time of its enactment, except with the consent of the participating carriers or upon an order of the co-ordinator. At the hearing before us, counsel for the government announced that he did not put his defense upon the Emergency Railroad Transportation Act, stating that he inclined to agreement with the position of the Circuit Court of Appeals for the Fourth Circuit in Atlantic Coast Line R. Co. v. Hampton & Branchville R. Co., 80 F.(2d) 797. Counsel for the Commission did not disagree. This point was supposed to be out of the case, but has evidently been revived at the instance of the Quanah, which relies upon it as a major premise in its brief, and for whose interest the action by the Commission seems primarily to have been taken. We cannot indulge this contention of defendants. Title 1 of this Transportation Act (49 U.S.C.A. § 251 et seq.) as its name implies, was emergency legislation. It has now expired by its own limitation. It was not an amendment to the Interstate Commerce Act (49 U.S.C.A. § 1 et seq.), and therefore did not change the powers or duties of the Commission. Amendments to the act were contained in title 2 (48 Stat. 217). When an act has thus expired, the effect upon past transactions is the same as if it were repealed at that time. In such case, in the absence of a saving clause, "all suits must stop where the repeal finds them. If final relief has not been granted before the repeal went into effect, it cannot be after." South Carolina v. Gaillard, 101 U. S. 433, 438, 25 L.Ed. 937; Baltimore & P. Railroad Co. v. Grant, 98 U.S. 398, 401, 25 L.Ed. 231. Compare Louisville & N. R. Company v. Western Union Telegraph Co. (C.C.A.6) 268 F. 4.

No question of the effect of said section 4 upon jurisdiction is present, and, therefore, the holding in Corporation Commission of Oklahoma v. Cary, Trustee, 296 U. S. 452, 56 S.Ct. 300, 80 L.Ed. 324, is without application. No co-ordinator could now order a change, and, without the consent of interested carriers, an existing route might become perpetual. Courts should hesitate to recognize such a situation. It follows that, pursuant to the findings made and conclusions reached, a permanent injunction should issue as prayed. A decree will be entered accordingly.