**NUCLEAR-CHICAGO CORP. and Hal O. Anger, Plaintiffs-Appellees,**

v.

**NUCLEAR DATA, INC., Defendant-Appellant.**

**No. 72–1241.**

United States Court of Appeals, Seventh Circuit.

Argued June 14, 1972.

Decided July 10, 1972.

Rehearing Denied Aug. 23, 1972.

Keith Shay, Daniel C. McEachran, Edward A. Haight, Peter V. Fazio, Jr., Robert J. Vollen, Haight, Hofeldt & Davis, Parker, Markey & Plyer, Schiff, Hardin, Waite Dorschel & Britton, Chicago, Ill., for defendant-appellant.

Robert L. Rohrback, M. Hudson Rathburn, Stuart S. Ball, Howard J. Trienens, Daniel U. Smith, Chicago, Ill., Walter C. Ramm, Des Plaines, Ill., Mason, Kolehmainen, Rathburn & Wyss, Sidley & Austin, Chicago, Ill., for plaintiff-appellee Nuclear-Chicago Corporation.

Before SWYGERT, Chief Judge, and KILEY and SPRECHER, Circuit Judges.

SPRECHER, Circuit Judge.

■ May plaintiffs in a patent-infringement action prove the irreparable damages requisite to a preliminary injunction by demonstrating the existence of a finite market for their product or by positing potential competition from third parties? This question is presented by the district court's issuance of a preliminary injunction restraining defendant from infringing the Anger patent despite the court's finding that defendant "is a large, solvent corporation that should be able to respond in money damages at some time in the future."

Licensed under a patent issued to plaintiff Anger, plaintiff Nuclear-Chicago Corp. manufactures and sells a "scintillation camera," which is used as a diagnostic device to detect possible abnormalities in body organs. Nuclear-Chicago has granted two sublicenses. There are six foreign companies manufacturing and selling Anger cameras abroad, as the invention is unpatented outside the United States. Defendant Nuclear Data, Inc., acquired one of these companies, Selectronik A/S Horsholm, in December, 1970. During 1971 Nuclear Data sold four Selectronik cameras in this country. These sales are the basis for plaintiffs' allegations of patent infringement.

■ The district court in its analysis of irreparable damages[1] found that the market for Anger cameras is a finite one. Only about 2,000 hospitals in the United States have the resources and the staff necessary to utilize such nuclear equipment; some 1,150 cameras have already been sold. While the district court believed the existence of a finite market alone did not necessarily make Nuclear-Chicago's damages irreparable, Nuclear-Chicago argues that it does.

Plaintiff theorizes that, if defendant is allowed to compete, Nuclear-Chicago will be unable to recoup its investment in the development of a sales and service staff. Plaintiff does not explain, however, why it could not show the amount of its uncompensated investment and compare it with the profit it would have gained from sales made instead by defendant, to prove the monetary measure-

---

1. Proof of irreparable harm is always a requirement for issuance of a preliminary injunction. Lawrence v. St. Louis–S.F. Ry., 274 U.S. 588, 592, 47 S.Ct. 720, 71 L.Ed. 1219 (1927); Tele-Controls, Inc. v. Ford Industries, Inc., 388 F.2d 48, 50 (7th Cir. 1967).

ment of its damages.[2] Indeed, it could be persuasively argued that proof of lost sales would be simpler in a finite market than in an expandable one.

The district court combined the finite market with a second factor in finding irreparable harm. That factor is the possibility of entry into the market by the five foreign companies and a number of American corporations. The court stated:

> As the United States represents approximately 60% of the total world market for Anger-type cameras, it can be assumed that such manufacturers are anxious to obtain access to the American market. Therefore, if no injunction is issued in the present suit, it is only logical to assume that most, if not all, of the foreign manufacturers will start importing their products into the United States. Furthermore, it is very likely that a number of American companies may begin production of infringing devices. At such time as Plaintiff will have a chance to litigate the validity of the patent, it may find the market for the device totally depleted and recovery against these numerous other companies, especially the foreign companies, impossible.

The court cited no authority for its unique and far-reaching theory of irreparable damages; plaintiff cites only one case, Eli Lilly & Co. v. Milan Pharmaceuticals, Inc., 169 U.S.P.Q. 32 (D.W. Va.1968). There the court entered a temporary restraining order for a stipulated period of 20 days. The court stated that defendant's infringement might encourage potential competitors to begin marketing similar products, and that it would be difficult or impossible to restrain numerous infringements during the remaining life of the patent.[3] The opinion includes no facts which might support such a finding; certainly no such facts appear in the present record. Plaintiff has not shown its potential competitors to be so numerous or so financially irresponsible that plaintiff could not protect its market with restraining orders or recoup its lost sales with money damages.[4]

▮ The inequity of penalizing defendant on the basis of possible competition by third parties and the uncertain nature of that competition and the injury it might produce militate against our deviating from the traditional rule that a defendant's ability to compensate plaintiff in money damages precludes issuance of a preliminary injunction. Tele-Controls, Inc. v. Ford Industries, Inc., 388 F.2d 48, 50 (7th Cir. 1967); Virginia Petroleum Jobbers Ass'n v. Federal Power Comm., 104 U.S.App.D.C. 106, 259 F.2d 921, 925 (D.C. Cir. 1958); Foundry Services, Inc. v. Beneflux Corp., 206 F.2d 214, 216 (2d Cir. 1953); Tyrolean Handbag Co. v. Empress Hand Bag, Inc., 122 F.Supp. 299, 302 (S.D.N.Y.1954).

We conclude that the district court abused its discretion in holding that plaintiff had proved irreparable damages. We reverse and remand the case for vacation of the preliminary injunction.

---

2. Courts have found that money damages would be adequate compensation for losses more difficult to prove than plaintiff's. *E. g.*, American Brands, Inc. v. National Ass'n of Broadcasters, 308 F.Supp. 1166 (D.D.C.1969). The standard seems to have been relaxed in J. M. Fields of Anderson, Inc. v. The Kroger Co., 310 F.2d 562 (5th Cir. 1962), but the reason undoubtedly was plaintiff's clear showing on the merits. (*See* 330 F.2d 686 (1964), in which the same defendants consented to making the temporary injunction permanent.)

3. We are informed that the case ultimately was settled.

4. Plaintiff's potential competitors will not be able to view the denial of a preliminary injunction as an invitation to enter the U.S. market, particularly in light of the district court's finding that plaintiff probably will establish the validity of the Anger patent and its license from Anger. We express no opinion on that finding, since the injunction must be vacated on other grounds.